# Hinkle, Appellant, *v.* Philadelphia.

*Municipalities—Contracts—Bidders—Appropriations.*

Where one of the bidders for the contract for the cleaning of the streets of one of the six districts of the city of Philadelphia has his bid accepted subject to a sufficient appropriation to cover the work, and it appears that at the time the bid was accepted, an appropriation had been made for the work of cleaning the streets of the whole city, but that this appropriation fell short of the aggregate of the contracts awarded for the six districts, the bidder is under no duty to execute a contract with the city or to do any work in cleaning the streets of the district for which he bid.

Argued Jan. 10, 1906. Appeal, No. 202, Jan. T., 1905, by John H. Hinkle, trading as J. H. Hinkle & Company, plaintiff, from judgment of C. P. No. 3, Philadelphia Co., March T., 1903, No. 4,279, for defendant on case tried without a jury in the matter of John H. Hinkle, trading as J. H. Hinkle & Company, *v.* City of Philadelphia. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit to recover moneys retained by the city. Before VON MOSCHZISKER, J.

The case was tried by the court by agreement of counsel without a jury under the act of April 22, 1874.

The facts are stated in the opinion of the Supreme Court.

Plaintiff presented the following requests:

9. That the plaintiff was not in default on his part in the performance of any duty or obligation resting upon him by not beginning the said work by January 5, 1904, as he was required to do by the director of public works in the letter of January 4, 1904.

To which the court made answer:

The court refuses to so find and finds that the plaintiff was

in default in not executing the contract when notified that same was ready for his execution, and thereby putting himself in a position to carry out his proposal for said work. Such a refusal on his part amounted in law to a declination to perform the work for which he had bid. [6]

11. That the plaintiff was not, under the conditions then existing, bound to begin the work by noon of January 5, 1904, as required by the director of public works, and a failure or refusal on his part to begin the work under such conditions as then existed would not justify the city in appropriating to its own use and withholding from the plaintiff the said sum of $5,000, so deposited by the plaintiff as aforesaid.

To which the court made answer:

The court refuses to find as requested, for the reason that all of the conditions then existing are not stated in the point, nor have they been duly stated in former requests. The point of law where sought to be raised will be discussed and decided in the opinion of the court to be filed herewith. [9]

13. Judgment ought to be entered for the plaintiff for the said sum of $5,000, with interest thereon, from January 5, 1904.

To which the court made answer:

The court refuses to so find. [11]

Defendant requested as follows:

1. That under all the evidence the verdict must be for the defendant.

The court so finds. [13]

2. That under all the evidence the defendant is entitled to a certificate in its favor against the plaintiff for the sum of $5,000.

To which the court made answer:

The court finds that the defendant is entitled to have judgment entered in its favor, that the plaintiff shall take nothing by his writ, and shall pay costs. [14]

3. That under the conditions of the proposal bond the defendant is entitled to recover from the plaintiff the sum of $5,000, being the difference between his bid, $239,000, and the bid and price paid Ruch, McLaughlin & Company, $244,000, for the performance of the said work.

To which the court made answer:

The court so finds. [15]

The court made the following conclusion of law :

In this case judgment will have to be entered that the plaintiff take nothing by his writ and shall pay the costs. [32] .

*Errors assigned* were, among others (6, 9, 11, 13, 14, 15 and 32), rulings on requests as above.

*E. O. Michener*, with him *J. Quincy Hunsicker*, for appellant. —It is clearly the law that the city could not legally call upon the plaintiff to begin the work until a contract had been executed, and it is equally clear that the plaintiff could not hold the city liable for any work done by him until the contract was duly executed and certified : City of Erie v. Moody, 176 Pa. 478 ; Hepburn v. Phila., 149 Pa. 335 ; Malone v. Phila., 147 Pa. 416.

The city was not bound by the award, and could any time before the contract is actually executed by it refuse to enter into the contract, and such refusal could not be made the basis of an action for breach of contract on the part of the city: Smart v. Phila., 205 Pa. 328 ; McManus v. Phila., 201 Pa. 619.

*T. D. Finletter*, with him *John L. Kinsey*, city solicitor, for appellee.—The defendant is entitled to recover damages commensurate with the injury suffered by nonperformance of his contract " to pay the difference between the bids." If the actual damage had been less than the penal sum of the bond, it could not have been successfully contended that the defendant could have recovered more than the actual damage suffered : Clements v. Schuylkill River, etc., R. R. Co., 132 Pa. 445.

And conversely it makes no difference in principle, if the amount of damage exceeds the penal sum: Graham v. Bickham, 4 Dallas, 149; s. c. 2 Yeates, 32; Shreve v. Brereton, 51 Pa. 175.

In the latter case, a verdict of $25,000 was upheld by the Supreme Court upon a bond in the penal sum of $10,000 : Hughes v. Hughes, 54 Pa. 240 ; New Holland Turnpike Co. v. Lancaster County, 71 Pa. 442 ; Robeson v. Whitesides, 16 S. & R. 320 ; Burr v. Todd, 41 Pa. 206 ; March v. Allobaugh, 103 Pa. 335.

OPINION BY MR. JUSTICE MESTREZAT, February 26, 1906 :

There is one controlling question in this case, and on the facts found by the trial judge, our view of it compels us to rule the case against the city. It is therefore unnecessary to discuss or determine the other questions raised on the record or to examine or review the testimony produced at the trial.

The bids or proposals were opened on December 30, 1903, and the contracts were awarded on December 31 for cleaning the streets of the entire city during the year 1904. For convenience in letting and performing the work, the city is divided into six street-cleaning districts. Contracts were awarded at the same time for doing the work in all the districts and aggregated the sum of $976,190. In the first four districts the contracts amounted in the aggregate to $734,000. The contract for the fourth district was awarded to the appellant for the sum of $239,000. On the day the contracts were awarded the city councils by ordinance appropriated the sum of $693,850 to pay " for cleaning streets, inlets, private alleys, undedicated paved streets, public market houses and for the removal and disposal of ashes and house waste," which sum so appropriated was $282,340 less than the total amount of contracts awarded for the work to be done in the city. Each of the successful bidders in all the districts was notified that he was a successful bidder for the contract for the work of his district and to commence the work on January 1, 1904. The appellant was notified by the chief of the bureau of street cleaning on January 1, 1904, that he was the " lowest bidder at $239,000, and the contract was awarded to you (him), subject to an appropriation to be made by the city councils," and that he was required to begin work immediately. On the same day he was also notified that the city solicitor would be requested to draw the contract and the appellant was notified to deposit ten per cent of the contract price in accordance with the specifications and proposal.

The appellant, by a letter dated January 2, 1904, and delivered the same day, notified the director of public works that he did not feel justified at that time, under the conditions as they then existed, to begin the work called for by the contract awarded him. On the same day, which was Saturday, the appellant was notified by the city solicitor to call on the following Monday, January 4, to execute " your bonds and contract

with the city of Philadelphia for cleaning of streets in the Fourth District of the city of Philadelphia during the year 1904." The appellant having failed to comply with this request, the director of public works sent a letter on Monday notifying him that if he did not commence the work by noon of the next day, January 5, the contract would be awarded to the next lowest bidder and the appellant would be held responsible for any loss or damage the city might sustain. The work was not begun at the time required by the director, and on January 5 the latter changed the award of the contract for the work in the fourth district and awarded it to the next lowest bidder at $244,000, which was $5,000 more than the appellant's bid. The director then delivered to the city treasurer the appellant's certified check for the sum of $5,000, which was paid to the treasurer. This check had been deposited by the appellant with his bid in compliance with the following provision of the specifications : " A certified check in the name of the bidder payable to the order of the treasurer of the city of Philadelphia for $5,000 must accompany each bid. This check will be returned at once to the unsuccessful bidders; but will be transferred to the city treasurer on account of the ten per cent. required to be deposited by those to whom the contracts are awarded."

The appellant submitted his bid on December 24, 1903, and at the same time signed the proposal and specifications, and as required by ordinance also entered into a bond with a surety to the city in the penal sum of $500, conditioned " That if the bid of the said John H. Hinkle, trading as aforesaid, is the lowest, and he shall decline to perform said work, that we will pay to the city the difference between the amount of his bid and the bid of them or him who shall actually perform said work." One of the conditions contained in the specifications is : " This proposal will hold good until an appropriation is made by city councils for the work to be done and the award will be made subject to an appropriation."

After the contract for the work in the fourth district had been changed and awarded to the lowest bidder, the appellant demanded of the director of public works the return of his certified check, which was refused. This suit was then brought to recover $5,000, the sum called for in the check, with its interest. The case was tried before the court without a jury.

The appellee pleaded non assumpsit, payment with leave, etc., and set-off, and gave notice of special matter and set-off. The appellee's position on the trial which was sustained by the court below was that the appellant's " declination to sign the contract was a declination to do the work, within the terms of the proposal bond," and that as against the appellant's claim for $5,000, the appellee had the right to set off, in the language of the condition of the bond, " the difference between the amount of his bid and the bid of him or them who shall actually perform said work." This sum, as appears by the evidence, was $5,000, the exact amount of the appellant's certified check for which he sues in this action. The appellee does not contend that the $5,000 check, deposited by the appellant, was forfeited, but claims the right to set off against it the damages the city has sustained by a breach of the appellant's proposal bond in declining to do the work called for in the contract awarded him.

The burden was upon the appellee, under the pleadings, to show that the appellant had failed to observe the condition of his bond. We have referred above to the material facts in the case bearing upon that question, and they do not sustain the appellee's contention. We are clearly of opinion that up to the time the director of public works changed the award and let the contract for the work to the next lower bidder, the appellant was not required, under the conditions then existing, to sign a contract to do the work on the terms of his bid. If he was not required to sign the contract, it follows that he was not required to do the work called for in his bid. That is clear from the statutory provisions regulating municipal contracts and our decisions construing them, and is substantially admitted in the printed brief of appellee's counsel. It is there said : " The fact is, he (plaintiff) first declined (very properly) to do the work until the contract was signed ; and then declined to sign the contract when it was tendered." Was the appellant legally justified in declining to execute the contract ?

The statutes and city ordinances made in pursuance thereof provide when, and the manner in which, city contracts shall be made, and we have frequently and uniformally held that a valid contract cannot be entered into without a strict adher-

ence to those statutes and ordinances.   Section 7 of the Act
of May 23, 1874, P. L. 230; 2 Purd. 1396, pl. 25, provides
that: "No money shall be paid out of the city treasury ex-
cept upon appropriations made by law, and on warrant drawn
by the proper officer in pursuance thereof."   The 7th section
of the Act of June 1, 1885, P. L. 37; 2 Purd. 1518, pl. 717,
provides: "Every contract .... shall designate the item of
appropriation on which it is founded, and shall be numbered by
the controller in the order of its date and charged as numbered
against such item, and so certified by him before it shall take
effect as a contract, and shall not be payable out of any other
fund, and if he shall certify any contract in excess of the ap-
propriation properly applicable thereto, the city shall not be
liable for such excess."   The 5th section of the Act of April
21, 1858, P. L. 385; 2 Purd. 1519, pl. 723, declares that "No
debt or contract hereafter incurred or made shall be binding
upon the city of Philadelphia, unless authorized by law or or-
dinance, and an appropriation sufficient to pay the same be
previously made by councils."   The first section of the Act of
June 11, 1879, P. L. 130; 2 Purd. 1424, pl. 50, provides:
"The city controller shall not countersign any warrants ....
pertaining to any of the appropriations, until the said councils
shall have first passed all appropriations necessary for the ex-
penses for the current year of each department ....; nor
shall said officer countersign any warrants, .... until the
total of all appropriations, all estimates, .... shall have been
brought within the sum yielded by the tax levy and average
income from other sources ....; and any appropriation or
expenditure, in excess of this total shall be void, and shall
have no binding force upon the municipality."   Article 14 of
the Act of June 1, 1885, P. L. 37; 2 Purd. 1517, pl. 715, de-
clares that: "All contracts relating to city affairs shall be in
writing, signed and executed in the name of the city by the
officer authorized to make same. . . .   Every contract for
public improvements shall be based upon estimate of the whole
cost furnished by the proper officer through the department
having charge of the improvement, and no bid in excess of
such estimate shall be accepted.   Every such contract shall
contain a clause that it is subject to the provisions of this act,
and the liability of the city thereon shall be limited by the

amounts which shall have been or may be, from time to time, appropriated for the same."

Under these statutory provisions, which are mandatory, it is manifest that the city was not in position to enter into the contract for the street cleaning of the fourth district on January 5, 1904, when it changed the appellant's award and denied him the opportunity and the right of executing a contract for the work. As we have seen, the aggregate of the contracts for cleaning the streets in the city awarded December 31, 1903, was $976,190. On the same day the councils appropriated $693,850, which, as the trial court held, was "for the purpose of cleaning the streets and removing the ashes in the city of Philadelphia, which covered the whole of the six districts, in which the bids amounted to $976,190, (and) that no further appropriation was made by councils to pay for the balance of the work until the 17th day of February, 1904." In other words, the appropriation made by the councils for cleaning the streets of the city were $282,340 less than the accepted bids for the work. These were the conditions which existed at the time the appellant declined to enter into a contract for the work for which he had submitted a proposal. The court held, however, that these conditions did not relieve the appellant, that the appropriation was sufficient to cover his bid, and that complied with the statutory provisions requiring a prior appropriation to be made for the work. The learned judge's reason for his conclusion on this point is stated by him as follows : "Our view of the law coincides with the view expressed by the city controller when on the stand in this case, to the effect that he would be justified in certifying all contracts sent to him, under the words of this particular appropriation, up to the amount of the appropriation, but not beyond the same." But this view overlooks and disregards, not only the mandatory provisions of the statute but also the explicit language of the appropriation for the work, which is as follows: "For cleaning streets, inlets, private alleys, undedicated paved streets, public market houses and for the removal and disposal of ashes and house waste, $693,850." This appropriation, as held by the trial judge, clearly covered the work to be done in the whole city and not any special district thereof, and payment out of it could be demanded for work in any of the six street-cleaning districts of

the city.   No contractor for any district had a claim on the appropriation to the exclusion of the contractors for the other five districts.   It was available to all alike.  · But it is contended by the appellee, and so held by the court below, that the controller has the authority to dispose of the partial appropriation by certifying contracts aggregating that amount, and that his certificate would have protected the plaintiff had he entered into a contract.   If this be true then we have an appropriation made by the city councils for cleaning the streets of the whole city applied to the work of cleaning the streets of a part of the city, and such parts only as, in his discretion, the controller shall select by the certification of a contract.   If the appropriation, though general and covering the work of the entire city, be sufficient to pay only the bid for the work in one of the districts, the controller by certifying a contract for that district may apply the whole appropriation to one-sixth of the city.   It was the intention of the law making power that the councils should control the appropriations for street cleaning, and unless they limit them to certain districts it is not in the power of the city controller, by any discretionary act on his part to do so.   There is no limitation whatever put upon the appropriation in question.   It is as broad as the city itself and, until the appropriation was exhausted, every contractor had the right to demand the price of his contract out of it.

It is said by the court below in support of its position that at the time the city demanded that the appellant enter into a contract, " the other contracts for street cleaning had not been entered into, and the city, for its own reasons, did not execute those contracts or call upon the other contractors so to do until February, 1904, satisfactory arrangements having been made in the other districts to carry on the necessary work pending the actual execution of the contracts." By what authority, however, did the city officials postpone the letting of the contracts in the other districts?   And what reason had the appellant to believe that they would disregard their duty in this respect and neglect or refuse for more than a month to sign contracts with the successful bidders in the other five districts and certify the amounts of those contracts against the insufficient appropriation?   It is found as a fact by the trial judge that on December 31, 1903, the day the contracts were awarded,

" notices went out to all successful bidders, notifying each that he was a successful bidder for a contract for a certain district and to commence the work on January 1, 1904." And the appellee, in his printed argument, has clearly demonstrated that the work of cleaning the streets should have been begun immediately after the contracts were awarded. The urgency of the work is also shown in the opinion of the trial court wherein it is said : " This particular work was for cleaning streets, etc., during the year 1904, which of course on its face, owing to the character of the work, showed that active operations would, of necessity, have to begin on January 4, 1904, and that time was of the essence of the matter." The city officials, therefore, should, and it must be presumed would, have provided for beginning the work in all the districts by executing the contracts at once. The statutory provision is mandatory that those contracts shall be in writing, and it follows that that is the only legal way that " satisfactory arrangements " could be made for carrying on the work. The appellant, therefore, had the right to assume that the contracts for all the other districts would, like his own, be let at once, and, necessity demanding it, the contractors would begin the work immediately, and for their protection the contracts would be certified against the appropriation by the controller. There would then have been, on January 1, 1904, contracts certified to the amount of $976,190, to be paid out of an appropriation of $693,850, which is nearly $300,000 less than the aggregate of the contracts awarded. Under these circumstances, the appellant was compelled to decline entering into a contract or to rely for payment of his money on the controller " marking off," or giving preference to, his contract over other and similar contracts, which was beyond the authority of the controller, in direct violation of the mandatory provisions of the statute, and would not have been binding on the city.

The appellant's bid as well as the award to him were made subject to a sufficient appropriation to cover the work. Both the city and the appellant in the bid and the award recognized the necessity for an appropriation to give validity to the contract. In the specifications furnished by the city and subject to which the proposal was submitted appears the following condition : " This proposal will hold good until an appropriation is made by the city councils for the work to be done and the award will be

made subject to an appropriation." In awarding the appellant the contract for the work in the fourth district, the director of public works notified him that he was the lowest bidder " and the contract is awarded to you subject to an appropriation to be made by the city councils." Had the appellant entered into a contract and done the work, it would have been with full notice that he could not compel payment of his bid without showing that councils had made a specific appropriation for the work. It would not have availed him in support of his claim that an obliging director had assured him that he would " mark off " his contract against the partial appropriation. To a suggestion of that kind, the city would have properly replied that neither the statutes nor the city ordinances vest in the director the authority to discriminate in favor of one contractor against another in paying their claims out of an insufficient appropriation made for the work to be done in that department of the city.

We are of the opinion that a contract for cleaning the streets of one part of the city could not legally be made until an appropriation had previously been made sufficient to pay all the contracts awarded at the same time on December 31, 1903, for the work in that department of the city, and that until such an appropriation had been made, the appellant was not required to sign a contract to do the work of the fourth district in pursuance of his proposal. It follows that he was not in default in declining to sign the contract presented by the city and hence was not in default in refusing to commence the work. There was, therefore, no breach of the appellant's proposal bond which could be interposed as a defense to his action for the recovery of his deposit and judgment should have been entered for him by the trial judge.

The sixth, ninth, eleventh, thirteenth, fourteenth, fifteenth and thirty-second assignments of error are sustained, the judgment is reversed, and the court below is directed to enter judgment in favor of the appellant and against the appellee for $5,000, with interest from January 5, 1904, and costs.