# Anders, Appellant *v.* Philadelphia.

*Municipalities — Municipal contract—Conspiracy—Competitive bidding—Accounting—Equity.*

1. On a bill in equity by tax payers against a city, certain of its officers, and a municipal contractor, to declare a contract void because it was the product of an unlawful combination entered into with the view to prevent competitive bidding, and for an accounting from the contractor, the prayers of the bill cannot be granted where the court finds as a fact based on sufficient evidence, that there was no improper understanding among the bidders, and that the close approximation in the bids showed that there was competitive bidding in fact; and such prayers will be refused although the court finds as a fact that the contractor failed to comply strictly, or fully with the requirements of the contract, that this failure was known to the officers of the city, and that it was not expected or contemplated by such officers when the contract was awarded that there would be a strict and literal compliance by the successful bidder, whoever he might be, with all the requirements of the contract. The fact that there was such an understanding on the part of the city officers is not evidence of an unlawful combination to defeat competitive bidding.

2. The complainants in such a bill have no standing to demand an accounting of the contractor of moneys which he received for work which he had not done. Such an accounting can be required from him only by the city itself.

Argued Jan. 12, 1912. Appeal, No. 241, Jan. T., 1911, by plaintiffs from decree of C. P. No. 4, Phila. Co., Dec. T., 1910, No. 807, on bill in equity in case of Howard S. Anders et al. v. City of Philadelphia. John E. Reyburn, Mayor of the City of Philadelphia, John M. Walton, Controller of the City of Philadelphia, George R. Stearns, Director of the Department of Public Works of the City of Philadelphia, Wm. R. Benson, Chief of the Bureau of Highways of the City of Philadelphia, John Virdin, Chief of the Division of Street Cleaning of the Bureau of Highways of the City of Philadelphia and Edwin H. Vare. Before FELL, C. J.,

BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Bill in equity to declare a contract void and for an accounting.

WILLSON, P. J., filed an opinion in which he found the facts and law as follows:

### FINDINGS OF FACT.

a. The contract was entered into between the defendant Vare and the City on the 18th day of February, 1910. After due advertisement, it had been awarded to him on the 7th day of December, 1909. It called for work to be done from the first of January, 1910, until the end of the same year, and work was done under the contract from the date of its execution. Work was also done between January 1st and February 18th, which the defendants have treated as covered by the contract.

b. In competition for the contract four bids were presented to the City in response to the advertisement asking for such bids. The bidders were Peoples Brothers, Mack Paving and Construction Company, David McMahon, and the defendant E. H. Vare. Vare, to whom the contract was awarded, was the lowest bidder. We are not able to find anything in the proofs which would warrant us in reaching a conclusion that these bids, or any of them, were collusive as between the bidders and Vare.

c. The contract and specifications called for the doing of work which has been substantially detailed in the second section of the previous recital of the plaintiffs' bill. It does not seem to us that there would be any advantage in a repetition of what is therein set forth. We are satisfied by the proofs, and we find that, in numerous respects, which we need not now detail, but which will be set forth more fully in our answers to the plaintiffs' requests for findings of fact, the contractor Vare failed to comply strictly or fully with the

requirements of the contract. And we further find that his failure fully to comply with the provisions of the contract must have been known, and, in point of fact, was known to the officers of the City who had supervision over the work which the contractor had agreed to do.

d. We further find, as a fair deduction from the proofs, and particularly from the previous experience of the City officers with the carrying out of contracts relative to the same subject-matter, that, at the time when bids for the work in question were asked for, and also at the time when the contract was awarded to Vare, it was not expected or contemplated by those officers that there would be a strict and literal compliance by the successful bidder, whoever he might be, with all the requirements of the contract.

e. At the same time we are not able to find in the proofs sufficient reason for holding and finding that there was any real combination or conspiracy or collusion between the officers of the City and Vare, either in the awarding of the contract to him, or in the manner in which he carried out or was allowed to carry out the provisions of the contract. Upon this particular point, a crucial one in the case, we may be permitted to enlarge somewhat and to express our views with some elaboration.

The whole subject of contracts for the cleaning of streets is attended with many inherent difficulties. This has been demonstrated in the history of this and other municipalities. There may be no impropriety in its being said that when, many years ago, the writer of this adjudication was connected with the Law Department of the City, questions arose and were brought before the courts involving the practical possibility and propriety of a strict interpretation and enforcement of various provisions in contracts for the cleaning of streets. The difficulties connected with such a severe standard of requirement then necessitated some

laxity of construction, and any practical method of dealing with the subject matter is likely to make it necessary that a certain amount of flexibility and the exercise of a good honest judgment shall be permitted in the enforcement of contracts of the nature referred to. The object to be attained in the making of such contracts is, of course, the cleaning of the streets, and the doing of such other work as is incidentally connected therewith. That is the main end to be had in view, and officers of the City who supervise such work would naturally keep it in mind. Whether or not a form of contract for the work of cleaning streets could be devised which would enable the desired object to be attained without holding the contractor to the furnishing of any particular number of implements or of men or of day's work, is a question that we need not now discuss. When the contract contains specific provisions such as are embraced in the contract now in question there can be no doubt that it is the duty of the City officers to require a substantial performance of those provisions. We are far from holding that the contract obligations can be ignored or disregarded. The pertinence of what we have referred to, however, is this, that it is not unnatural that municipal officers entrusted with the supervision of the cleaning of streets should look mainly to the ends to be accomplished, rather than to the particular means employed for the purpose of reaching those ends. It may and must be said also that, unless proofs before the court compel a conclusion that municipal officers entrusted with the supervision of the cleaning of the streets were influenced, not by the general purpose of obtaining clean streets, but by a desire to favor a contractor and relieve him of work which he was bound to do under his contract, then a court ought not to find such officers guilty of an improper and illegal confederation in the nature of a conspiracy. We find nothing in the circumstances connected with the awarding of the contract to

Vare which would justify the thought that there was any collusion between the City's officers and him in regard thereto. It was doubtless the fact that Vare had a plant or appliances whereby the work of street cleaning could be done, and that other bidders probably were not so well situated and therefore could not bid to the same advantage. It is also true that this disparity might have been overcome if the bids had been asked for at an earlier date than that at which, in point of fact, they were requested. At the same time, it should be said not only that other bids were made for the contract in question, notwithstanding the disadvantage of position, but that the time of the asking for bids had been for many years customary with the City authorities. Unless we should be disposed to put an unfavorable constuction on such a state of affairs merely for the sake of reaching a conclusion derogatory to the City's officers, we would not be justified in adopting that construction. At the same time, it is proper for us to say that there seems to be no reason why, in all such cases, and in cases of a similar character, bids could not be asked for at a period of time when, to the advantage of the city as well as for the convenience of the bidders, all bidders would have an opportunity to bid intelligently and to equip themselves with the necessary appliances to carry out any contract which might be awarded to them.

As to the performance of the contract by Vare after it was awarded to him, notwithstanding we have already found, as our conclusions from the proofs, that he failed substantially to comply with the provisions of his contract, in its details and particular obligations, yet we are unable to find sufficient ground to sustain the plaintiffs' contention that this failure on his part was either the result of a previous understanding or collusion with the officers of the city, or was permitted by reason of any such understanding or collusion. We by no means question the accuracy of the

proposition that a conspiracy or combination of the nature referred to may properly be inferred from a series of significant acts or omissions which naturally and necessarily lead to the conclusion that the acts or omissions constituting or evidencing the violation of a contract were the result of an actual understanding and agreement between the contractor and those entrusted with the supervision of his work, that such acts or omissions should be allowed without objection and without abatement of compensation by reason of his failure to do work that ought to have been done. In every case where such a question arises, it becomes necessary for the tribunal hearing the case to exercise a candid and intelligent judgment as to whether the facts developed in the case warrant a conclusion that the alleged collusion existed. We have endeavored to apply such a judgment to the proofs in this case. Notwithstanding we are of the opinion that there were serious departures on the part of the contractor from a strict and full compliance with the specific provisions of his contract, and that these must have been known, and should have been the subject of proper treatment, by the City's officers, we still are unable to find that these officers were in a guilty combination or conspiracy with the contractor. In this connection, it must be borne in mind that the question before us is not to be settled by any views which we may have as to the sufficiency of the work done by the contractor to keep the streets clean, or as to the full fidelity and efficiency of the officers of the City in supervising the work of the contractor, or as to the manner in which the contractor performed his work, or even as to whether or not, if he had strictly complied with the terms of his contract, he would have made or lost large sums of money. The simple and single questions now under consideration is whether or not the proofs in the case ought to lead us to the conclusion that there was an agreement or combination between the contractor

and the supervising officers of the City whereby he should be favored and allowed to draw money under the contract without doing the work which would justify the payment to him of the money received by him.   The affirmative of this question was assumed by the plaintiffs when they filed their bill, and it was incumbent upon them to establish it by sufficient proofs before we can properly be asked to sustain their position.

f. We find it to be true, although the contract in question was awarded to Vare on the 7th of December, 1909, that he did not, in point of fact, receive or enter into the formal contract until the 18th day of February, 1910, and, therefore, that whatever work he did between January 1st and February 18th of that year was done without any formal or written contract having been entered into for the doing of such work.

### FINDINGS OF LAW.

(*a*) In view of our findings of fact as they have been hereinbefore set forth, it requires but few words to state our conclusions as to what is the legal position of the parties, with reference to that portion of the plaintiffs' case which claims that the contract in question was null and void because it was either entered into or carried out under collusion and fraudulent combination with the City's officers.   It having been our conclusion that no such collusion or combination existed, no legal question of that nature arises, and we, therefore, find that the plaintiffs' bill cannot be sustained upon any such ground.

(*b*) So far as the plaintiffs' case is based upon a claim that the contractor, Vare, failed to comply with his contract to do the work called for by the specifications, and, therefore, that he is bound to account for and repay to the City the moneys which were received by him from the City for the work which he ought to have done under the contract, we deem it sufficient to

say that in our judgment the plaintiffs have no standing to require the contractor to render any such account. If it were within the power of taxpayers in all cases wherein it might be claimed that a contractor had failed to comply with the provisions of his contract, to come into court and cause the matter to be investigated, and, in case of default of performance, to require the contractor to render such an account as is called for in this case, the affairs of the City would be thrown into endless confusion, and the proper functions of the municipal officers would, to a large degree, be devolved upon and assumed by the courts. We regard the municipal authorities as the repository of all the power that is needed to deal with such questions, as a general rule. A gross violation of duty might be sufficient ground for impeachment or prosecution. However that may be, the supervision of work done under municipal contracts and the making of payments for work done under them, in the absence of fraud of a character which would justify the interference of a court of equity, must be left to those who by law are entrusted with the responsibility over those matters.

(c) In determining whether the contractor had a right to demand payment for work done from January 1st to February 18th, 1910, we must follow the views which have been expressed by this Court in cases recently decided and, particularly, in the case of Bullitt v. Philadelphia, 19 Pa. D. R. 1091.

We have held that it is essential to the making of a valid contract between the City and a contractor that not only must a previous appropriation of the moneys necessary to pay the contractor for the work to be done by him have been made, but, also, that the contract itself must have been executed according to the requirements of the Act of June 1, 1885, P. L. 37.

In the case in hand, the second of these necessary elements was entirely wanting, until the 18th day of February, 1910. Therefore, all the work done by Vare

before that date must be regarded as having been done in the absence of a contract. For that reason, he had no right to demand payment for such work from the City, as a matter of legal obligation. It appears from the proofs that the contractor has received from the City a payment which was intended by the officers through whom the payment was made to cover the work done by him during the period in which no formal contract existed.

That payment, however, was unauthorized by law, and must be accounted for by the contractor in the final settlement for the work of the year under the terms of the contract. It does not seem to us that, in that regard, it makes any difference whether the obligation to pay the contractor was entire or severable. So far as the payment for work done between January 1st and February 18th is concerned, the contract finally executed has no relation to the payment, for that contract was not in existence during that period. There is, therefore, no force in the argument that the plaintiffs are estopped from objecting to that payment, on the ground that it was made upon the basis of a certificate from the Director of Public Works that the work was done and the money due. Any such certificate was given without authority and had no effect, under the provisions of the contract as it was executed. We must regard all payments made as applicable only to work done after the contract was entered into, viz., after February 18th, 1910. The defendants contend that we should not adopt this view because of laches or delay on the part of the plaintiffs in objecting to the payment made, but we do not regard the point as well taken. There is nothing in the proofs to show that the plaintiffs had any knowledge that Vare was doing work in the absence of a contract, and, therefore, no duty or obligation rested upon them to move promptly, if they desired to move at all. We do not regard the present

case as ruled by our decision in the case of Sheppard v. Philadelphia, 17 Pa. D. R. 636.

It follows, therefore, that in the decree which shall be made in the present case, it must be ordered that the amount paid to Vare for work done in the year 1910, prior to February 18th, shall be treated as having been paid for work lawfully done under the contract, that is, for work done after the date last mentioned.

Complainants filed the following exceptions:

"1. The learned Court erred in finding as follows:

'E. At the same time, we are not able to find in the proofs sufficient reason for holding and finding that there was any real combination or conspiracy or collusion between the officers of the City and Vare, either in the awarding of the contract to him, or in the manner in which he carried out or was allowed to carry out the provisions of the contract.' " [1]

10. "The learned Court erred in its answer to the fifty-seventh request for findings of fact by the plaintiffs, which request and answer were as follows:

'57. The contract in suit was the result of an unlawful combination between the contractor and the officers of the City to defeat the provisions of law relative to competitive bidding.

Answer: We decline to affirm this request.' " [2]

"17. The learned Court erred in its answer to the fourteenth request for findings of law by the plaintiffs, which request and answer were as follows:

'14. The contract in suit is void because it was the result of an unlawful combination between the contractor and officers of the City, to defeat the statutes relative to competitive bidding.

Answer: Declined.' " [3]

"19. The learned Court erred in not restraining defendant City from making further payments to the defendant Vare, as prayed for in the second prayer of the bill." Answer: Declined [4]

"20. The learned Court erred in not requiring de-

fendant Vare to account for the sums of money illegally received by him and to pay the same into the City treasury, as prayed for in the third prayer of the bill." Answer: Declined. [5]

*Errors assigned* were (1-5) in dismissing complainant's exceptions as above.

*Thomas Raeburn White,* for appellants.—The evidence was sufficient to establish a conspiracy: Com. v. Sanderson, 40 Pa. Superior Ct. 416; Com. v. Snyder, 227 Pa. 346; Nelson v. New York City, 131 N. Y. 4 (29 N. E. Repr. 814).

*Francis Shunk Brown,* of *Simpson, Brown & Williams,* with him *John C. Bell* and *James Alcorn,* city solicitor, for appellees.—The plaintiffs' right to a decree cannot rest upon mere alleged breach of a contract, or upon a variation in the manner of performance consistent with good faith: Brown v. Philadelphia, 17 Phila. 298.

Plaintiffs are met by the weighty presumption of honesty, the presumption of fidelity on the part of the public officials, and the presumption in favor of the award of an arbitrator: Clark v. Pittsburgh, 217 Pa. 46; Payne v. Roberts, 214 Pa. 568; Hostetter v. Pittsburgh, 107 Pa. 419; Com. v. Philadelphia, 211 Pa. 85; Com. v. Pittsburgh, 204 Pa. 219; Com. v. Pittsburgh, 206 Pa. 379; Com. v. Mitchell, 82 Pa. 343; Findley v. Pittsburgh, 82 Pa. 351; Douglass v. Com., 108 Pa. 559.

The bill alleges a conspiracy and this must be proved in order to sustain the plaintiffs' position.

In the case of Ballantine v. Cummings, 220 Pa. 621, there is no basis for the charge that the specifications prevented competitive bidding: Filbert v. Philadelphia, 181 Pa. 530; Pittsburgh Terra-Cotta Lumber Co. v. Sharp, 190 Pa. 256.

OPINION BY MR. JUSTICE STEWART, February 19, 1912:

The plaintiffs, residents and taxpayers of the city of Philadelphia, sought by bill in equity to restrain further payments under a contract between the city of Philadelphia and Edwin H. Vare, one of the defendants, by which Vare for the consideration of $1,299,000, undertook to clean the streets of the city during the year 1910 in accordance with the specifications recited in the contract, on the ground that the contract had been let as the result of a collusive understanding that Vare was not to be required to do all the work specified in the contract; that he was to be permitted to disregard the specifications without incurring the stipulated penalties, and was to be allowed to receive the entire amount of his bid regardless of the amount of work by him performed; that the purpose of such collusive understanding was to prevent competitive bidding and that such had been its effect. It was charged that Vare had performed less than one-half the work required under the contract and specifications; that notwithstanding, he had been paid ratable monthly installments, excepting for the month of December, on the full amount of his bid; that the stipulated penalties had not been enforced against him, and generally, that the contract was null and void because let pursuant to a conspiracy entered into to cheat and defraud the city. In the separate answers filed by the city and by Vare, the material averments of the bill were specifically denied, and issue was accordingly joined therein. The record before us is voluminous, but we are spared the labor and examination of the evidence by the admission on part of the appellants that the findings of the learned chancellor who heard the case correctly exhibit it on its facts. The case has been submitted on these findings, and the only contention made is that it results from the findings, as an inevitable inference, that the contract with Vare was the product of an un-

lawful combination entered into with a view to prevent competitive bidding, and that the chancellor erred in his conclusion therefrom that the proofs were not sufficient to warrant him in finding that there was no real combination or conspiracy to this end. We deem it unnecessary in this connection to do more than indicate in a brief way the special findings on which the appellants rely, since, however important the facts established might be in an action by the city against the defendant Vare, as we view the case, they are without controlling significance in connection with the one governing question which is squarely raised in the assignments of error. The special findings may be thus briefly summarized. There was failure on Vare's part to comply strictly or fully with the requirements of the contract; the officers of the city had knowledge of such failure as the work progressed through reports made to them by the Inspector; there was like failure by Vare and like knowledge by the officers of the city with respect to similar contract for the year 1909; strict compliance with the specifications in the contract of 1910 would have resulted in the loss of a very large sum of money to the contractor, amounting in all probability to more than a million dollars, and possibly to over two millions; seven thousand dollars was exacted of Vare in the way of fines for violation of specifications during 1910; when Vare submitted his bid he knew that to perform the work in accordance with the specifications at the price bid by him would necessarily result in serious loss to himself; when the contract was awarded, the main object the officers of the city had in view was the proper and sufficient cleaning of the streets during the year, and they did not expect the specifications of the contract to be strictly and in all details carried out by the contractor; the daily reports of the contractor of men and machines employed by him were largely in excess of the actual number of men and machines actually employed. The contention on

part of appellants is two-fold; first, that applying to these facts "the interpretation consistent with ordinary human action and common sense, there is an inevitable inference that there was an understanding between the officers of the city and the contractor, when the contract was awarded, that the contractor would not be required literally to obey the specifications and would not be fined for disobedience of them;" and second, "if there was such understanding, it would amount to an unlawful combination to defeat the statutes requiring competitive bidding." The first proposition is too plain for discussion, and is conceded; but that the second results as a conclusion from the first is clearly a non sequitur, as the facts in the case abundantly show. Nothwithstanding the above facts relied upon by appellants, we have this distinct and unchallenged finding by the chancellor: "In competition for the contract four bids were presented to the City in response to the advertisement asking for such bids. The bidders were People Brothers, Mack Paving and Construction Company, David McMahon, and the defendant E. H. Vare. Vare, to whom the contract was awarded was the lowest bidder. We are not able to find anything in the proofs which would warrant us in reaching a conclusion that these bids, or any of them, were collusive as between the bidders and Vare." If we refer to the testimony we find nothing to impeach the correctness of this finding, but on the contrary much to support it. Conceding, as we must in the absence of evidence to the contrary, that these unsuccessful bidders were responsible parties, the burden rested upon appellants to show that they all participated in the alleged fraudulent collusion, and submitted their bids, not in good faith, but upon a fraudulent understanding that in any event the contract was to be let to this defendant. The fact that Vare had an understanding with the city officials that compliance with the specifications would not be required by him, however much this would be a

departure from plain business principles, and expose
the officials to suspicion and censure, would not show
conspiracy to defeat competitive bidding in any such
conclusive way as the law requires, except as it further
appeared that in this respect Vare was advantaged
over the others.  If all alike bid on the same terms and
with the same understanding, irregular and unbusi-
nesslike as the transaction would be, it would lack the
essential element of fraudulent conspiracy to defeat
competition between bidders.  Not only is there an ab-
sence of any finding that Vare bid with any under-
standing that the others did not have, but the close ap-
proximation in the bids would seem to indicate that
each had been governed in making his bids by the same
considerations which influenced the others.  The de-
fendant's bid was $1,299,000, another was $1,350,000,
another $1,403,000, while the fourth and highest ex-
ceeded the lowest by $200,000, which, as explained, in-
cluded the cost of assembling a plant with which to do
the work.  Can it be possible that these bids were made
in any different terms than those given to Vare?  If
they were—and here we exclude collusion because the
finding of the court acquits these bidders of that—then
it follows that each was willing to undertake, just as
Vare, to do work for the city which each knew would
cost upwards of a million dollars in excess of what they
were to receive therefor.  To our mind this, to say the
least, is most unlikely.  It would be far more reason-
able to infer that all alike understood that strict com-
pliance with the specifications was not to be required.
We have dwelt on this feature of the case because of its
controlling significance.  The third assignment of error,
which includes the second as well, fairly and squarely
raises the question we have been considering.  What is
there assigned for error is the refusal of the chancel-
lor to hold that "The contract in suit is void because
it was the result of an unlawful combination between
the contractor and officers of the City, to defeat the

statutes relative to competitive bidding." In the proposition here expressed we have the whole of appellants contention concentrated. If, as there stated, the contract resulted from any such combination, it follows necessarily that the contract was corrupt and should have been declared void; but if this be not established, according to the measure of proof which the law requires in such cases, the contention must fail, for in that event the failure to perform the work required under the contract in the manner therein provided, becomes a matter between the municipality and the delinquent contractor, as to which the former alone can be heard to complain. For, as well said by the learned chancellor, "So far as the plaintiff's case is based upon a claim that the contractor, Vare, failed to comply with his contract to do the work called for by the specifications, and, therefore, that he is bound to account for and repay to the City the moneys which were received by him from the City for the work which he ought to have done under the contract, we deem it sufficient to say that in our judgment the plaintiffs have no standing to require the contractor to render any such account. If it were within the power of taxpayers in all cases wherein it might be claimed that a contractor had failed to comply with the provisions of his contract, to come into court and cause the matter to be investigated, and, in case of default of performance, to require the contractor to render such an account as is called for in this case, the affairs of the City would be thrown into endless confusion, and the proper functions of the municipal officers would, to a large degree, be devolved upon and assumed by the courts. We regard the municipal authorities as the repository of all the power that is needed to deal with such questions, as a general rule. A gross violation of duty might be sufficient ground for impeachment or prosecution. However that may be, the supervision of work done under municipal contracts and the making of payments

for work done under them, in the absence of fraud of
a character which would justify the interference of a
court of equity, must be left to those who by law are
entrusted with the responsibility over these matters."
If there was competitive bidding without collusion on
part of the bidders—and this we have seen is an estab-
lished fact in the case—it follows that the letting of
the contract to Vare, no matter what may have been
the intention of Vare and the City officials in this re-
gard, could not have resulted from such intention; in
others words, if the purpose of the parties to the con-
tract was to avoid competitive bidding, and that pur-
pose failed in execution, the fraud contemplated could
not have entered into the contract subsequently made.
While the findings on which appellees rely are most
pertinent to the inquiry before us, and while they are
convincing that the ordinary safe-guards against fraud
were utterly disregarded in the letting of this contract,
yet, remembering that the one ground of challenge is
conspiracy to prevent competitive bidding, it cannot be
said that they are sufficient in themselves to establish
the guilt of the parties so accused.   In this connec-
tion we can do no better than repeat here what was
said by the learned chancellor in his opinion: "It must
be borne in mind that the question before us is not to
be settled by any views which we may have as to the
sufficiency of the work done by the contractor to keep
the streets clean, or as to the full fidelity and efficiency
of the officers of the City in supervising the work of
the contractor, or as to the manner in which the con-
tractor performed his work, or even as to whether or
not, if he had strictly complied with the terms of his
contract, he would have made or lost large sums of
money.   The simple and single question now under
consideration is whether or not the proofs in the case
ought to lead us to the conclusion that there was an
agreement or combination between the contractor and
the supervising officers of the City whereby he should

be favored and allowed to draw money under the contract without doing the work which would justify the payment to him of the money received by him. The affirmative of this question was assumed by the plaintiffs when they filed their bill, and it was incumbent upon them to establish it by sufficient proofs before we can properly be asked to sustain their position." It is to this feature of the case that we have confined the discussion. Our conclusion has already been indicated, and it only remains to state formally our concurrence in the findings and conclusions of the learned chancellor.

The appeal is dismissed at cost of appellants, and the decree is affirmed.