## Philadelphia & Reading Coal & Iron Co. et al., Appellants, v. Coal Township Directors of the Poor et al.

Argued January 18, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. A. Welsh* and *R. S. Hemingway,* for appellants.— It is the duty of municipal officers to keep current revenues: Georges Twp. v. Trust Co., 293 Pa. 364; Athens Nat. Bank v. Twp., 303 Pa. 479; Addyston P. & S. Co. v. Corry City, 197 Pa. 41; City of Erie's App., 91 Pa. 398.

There was no emergency: Addyston P. & S. Co. v. City of Corry, 197 Pa. 41; Georges Twp. v. Trust Co., 293 Pa. 364; Potters Nat. Bank v. Twp., 260 Pa. 104; Jackson v. School Dist., 280 Pa. 601.

*Francis Shunk Brown,* of *Brown & Williams, Charles C. Lark* and *William W. Ryan,* with them *Schaffer & Machmer, Fred B. Moser, John Kopyscianski, F. F.*

*Reamer* and *W. H. Unger,* of *W. H. Unger & Sons,* for appellees.—Equity has no jurisdiction to entertain a bill to declare invalid the audited obligations of a poor district: Brotzman's App., 119 Pa. 645; Georges Twp. v. Trust Co., 293 Pa. 364; Gable v. Altoona, 200 Pa. 15; Burger v. Twp., 13 D. & C. 539; O'Gara v. Phillips, 297 Pa. 526; Manor Real Estate Co. v. Cooner, 209 Pa. 531, 535; Com. v. Joyce, 3 Pa. Superior Ct. 609; Com. v. Sweigart, 9 Pa. Superior Ct. 455; Com. v. Gruver, 13 Pa. Superior Ct. 553.

OPINION BY MR. JUSTICE LINN, March 20, 1933:

This is a class bill filed by taxpayers. Respondents are a corporation, pursuant to the Act of April 15, 1863, P. L. 492, under the title "Directors of the Poor of Coal Township" (here called Poor District) certain past and present directors of the poor, treasurers, tax collectors, a number of banks and other note creditors. As there is no question of parties, they need not be more specifically described.

The bill was filed May 6, 1930, and prayed that certain promissory notes issued by the Poor District at various dates from 1906 to 1928, and carried in its accounts as temporary loans, be declared ultra vires, and that payment of the notes and balances due on them, and levy and collection of taxes for the purpose of paying them, be restrained. After answers were filed, hearing was held and voluminous testimony taken. The bill was dismissed and the taxpayers appealed.

Defendants produced evidence to show that, when incurred, the debts represented by the notes were created in anticipation of current revenue, and when that was not the case during parts of 1927 and 1928, the borrowing was necessary to meet unforeseen extraordinary emergencies; that at no time did the debts equal or exceed 2% of the assessed valuation of the taxable property of the district. They also contended, among other positions taken, that the record showed that plaintiffs

had an adequate remedy at law by appeal from the auditors' reports: Section 17, Act of 1863, supra.

The learned chancellor found that the obligations, when issued, were within the contemplated current revenue of the Poor District for the fiscal years in which they were executed, respectively, save as to parts of 1927 and 1928; that all the money borrowed was received by the Poor Districts and used for legitimate purposes. No assignments of error question the findings to that effect. In addition, he found that in the years 1927 and 1928, in consequence of unprecedented and unforeseen unemployment and resulting conditions described in the record, the Poor District was required to make extraordinary and unexpected payments for the relief of the poor; that the contingencies incident to this emergency were increased by litigation (reported in Com. v. Snyder, 294 Pa. 555, 144 A. 748) resulting from the death of the Treasurer of the Poor District in February, 1928, and the selection of a successor authorized to collect the taxes. The notes were issued with due formality and are therefore presumptively valid, and the rates of assessment complained against are less than the maximum allowed by section 6 of the act incorporating the Poor District.

In their brief, appellants have limited the review of their complaints by denying the validity of the loans made during parts of 1927 and 1928, the specific objections being (1) that no emergency required them, and (2) that evidence, offered by appellants against that inference, was rejected. As the findings of fact on those subjects are supported by evidence, and have the approval of the court in banc, we accept them. Well settled rules of law, correctly applied to them, required dismissal of the bill. As we all agree with that result, it is not necessary now to consider the effect of the auditors' reports or of other defenses suggested by defendants.

As appellants' entire argument assumes, and depends

on, the nonexistence of the emergency, we shall refer briefly to the evidence on which the finding was made. We may note, in passing, that appellants do not suggest that any part of the money in question was not needed, or was not properly applied. The record shows that the inhabitants of the Poor District depend almost wholly on the coal industry involving the operation of a number of collieries. Witnesses testified that during 1927 and 1928 some of these were closed, throwing many workers out of employment, and that some of them worked only part-time and with a relatively small force compared with the number of persons that might normally have been employed. It was shown that the effect on poor-relief applications, of this unusual condition of unemployment from early in 1927 through 1928, was to increase their number early in 1928, from the already large number of 600, to "about 1,300 on the list because of the mines not working," each application generally representing a family and not a single person. It was also shown that the unemployment was not incident to the coal industry alone but to others, for example, a silk mill is said to have "worked about 60% of the hands half time." Appellants in their brief do not point to any testimony contradicting the evidence of this character, relied on by the defendants, and certainly sustaining the learned chancellor; nor, as we have said, do they even suggest that the money spent for relief was not urgently required for that purpose. They complain that information on the subject, asked of their witnesses, was excluded, subject to exception. They have grouped a number of these exceptions in one assignment of error, contrary to rule 22; but even if properly assigned for error, we could not sustain the assignment. If the questions had been answered, the replies could not be essentially inconsistent with the evidence on which defendants rely, and would not materially affect the ultimate inferences made. Appellants proposed to show (quoting from their assignment) "the number of days the Cameron Colliery

worked in the years 1926 and 1927, the number of days the Richards Colliery worked in the years 1926 and 1927, and the number of days the Pennsylvania Colliery worked in the year 1927, in order to contradict the testimony of the defendant's witnesses, Michael M. Meehan and William H. Wetzel, that the large increase in outdoor relief in the Coal Township Poor District in the years 1926, 1927 and 1928, was due to the industrial conditions and the closing down of the collieries in the district." But, by itself, and nothing more is offered, that information would have had no value, in determining the issue, without some additional showing of the number of men that were at work and the relation of that fact to the number employed in normal times. The record contains evidence that an extraordinary burden was put upon the Poor District by the emergency growing out of the unemployment and requiring the expenditure of the money borrowed.

On this subject the learned chancellor said, "Second, the defendants attempt to justify the procedure of the directors by showing that in the years 1927 and 1928 the Poor District was faced with an extraordinary situation which amounted to an emergency. From the evidence we have found that many collieries in the district, employing a large number of the male inhabitants of the Coal Township Poor District, either completely or in large part closed down, and that as a result a great many persons were thrown out of work, making them and their dependents charges on the Poor District. This unemployment situation rendered difficult the collection of taxes so that the district was faced with rapidly increasing liabilities and decreasing available assets which forced them to borrow funds. In view of the long duration of the situation looking back on it today, it may seem difficult to understand how the directors could have failed to provide for its continuance. It must not be overlooked, however, that we view this matter in the light of what has happened, whereas the directors could

not avail themselves of hindsight. There was indeed some evidence, although nonconclusive, to the effect that the directors were led to believe that conditions were only temporary and that the collieries would soon again resume operations."

Undoubtedly there was confusion and uncertainty in the collection of part of the taxes in 1928 caused by the death of the Poor District Treasurer, the resulting litigation referred to, and the delay in naming his successor. In view of the other evidence in the case, it is not important to consider how much or how little this element contributed to the whole problem.

It is settled that a municipal corporation may borrow in excess of contemplated current revenues to the extent reasonably necessary, and within constitutional limitations, to cope with extraordinary emergencies in municipal affairs: Potter Nat. Bank v. Ohio Twp., 260 Pa. 104, 103 A. 605; Schilling v. Same, 260 Pa. 113, 103 A. 608; Athens Nat. Bank v. Ridgebury, 303 Pa. 479, 154 A. 791; Georges Twp. v. Trust Co., 293 Pa. 364, 143 A. 10. If that were not so, local government might fail when most needed. The loans in question made in 1927 and 1928 were none the less valid in the hands of the defendant holders because the Poor District used part of the proceeds to repay loans made in prior years.

"There is no constitutional restriction on municipal expenditure, provided it is paid [pays?] as it goes. What is prohibited is the incurring of debt. ...... It is not, however, always possible to adapt present action to future results with absolute precision, and if means are adopted which, in good faith, according to reasonable expectation, will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation, or an accidental and unexpected failure to produce the full result. Thus if the city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of fire, flood or decline in values, the result is an insufficient fund, it

cannot be held that the contract good at its inception would thereby be made bad. The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance": Addyston Pipe, etc., Co. v. Corry, 197 Pa. 41, 48, 46 A. 1035. See, too, Athens Nat. Bank v. Ridgebury Twp., supra; Miller et al. v. Mt. Lebanon Twp., 309 Pa. 216, 219; Scranton Elec. Co. v. Old Forge Boro., 309 Pa. 73.

It is unnecessary to consider the other positions taken by defendants.

Decree affirmed at the costs of appellants.