Union Paving Company, Appellant, *v.*
Philadelphia.

Argued November 19, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Manus McHugh,* with him *Saul, Ewing, Remick & Saul,* for appellant.

*Samuel Feldman,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellee.

OPINION BY KELLER, P. J., February 26, 1937:

This was an action in assumpsit brought by a contractor against the City of Philadelphia. It sought to impose on the city liability for certain assessment bills for street paving, issued against abutting property, which it had accepted in payment of the work and had been unable to collect from individual owners of property fronting on the improved street. The trial judge directed a verdict for the city, on the ground that the plaintiff's failure to collect the assessment bills was due to its own initial, negligent conduct in.paving the street before any valid and enforceable contract with the city had been executed, and not to negligence on the part of the city authorities with respect to the assessment bills. In our opinion the case was rightly decided.

On May 10, 1931, City Council passed an ordinance authorizing the Director of Public Works to enter into a contract with the lowest responsible bidder for the paving of Windrim Avenue from Germantown Avenue to Wayne Avenue; it being a condition of the contract "that the contractor shall collect the cost of the paving from the owners of property respectively fronting on said street." The ordinance provided that the cost of the non-assessable work, to be paid by the city, should be taken from any loan item for paving in the appropriation to the Department of Public Works, Bureau of Highways. The plaintiff became the lowest responsible bidder, and a contract was prepared dated October 23, 1931 between the city, of the first part, and the plaintiff, of the second part, whereby the plaintiff agreed to do the work for an amount not exceeding $5400, of which the city was to pay for work done in front of non-assessable property and for paving the intersection of cross streets by warrants drawn upon the City Treasurer, not exceeding $750, and the balance was to be paid by assessment bills against abutting property. The clause of the contract, as respects the assessment bills was as follows: "The party of the first part, for, and in consideration of the performance of this contract by the party of the second part, agrees to pay the party of the second part for paving and contingent work done under this contract ...... in assessment bills issued against abutting property ...... and against property in front of which such work is done, as provided by law, on bills and estimates of the District Surveyor of the Department of Public Works, at the rates and prices specifically set forth in the proposal hereto attached. It is agreed that such assessment bills shall be accepted as cash, and that the party of the first part does not in anywise guarantee either the value, the validity or the legality of such assessment bills and that in the event of failure to collect

the same, no recourse shall be had against the party of the first part by reason thereof, for the whole or any part of the same. The party of the second part agrees to accept and assume all risk of failure to collect such assessment bills whether such failure be due to the validity of said bills or to any other cause. It is agreed that the party of the second part may use the name of the party of the first part and employ the legal remedies of the party of the first part, to collect such assessment bills; and the party of the second part agrees to make every bona fide effort to collect such assessment bills by lien or action in assumpsit in all courts, including the Appellate Courts, without expense or cost to the party of the first part."

The Act of May 16, 1923, P. L. 207, regulating the filing, etc. of liens for municipal claims, etc. specifically provides, inter alia, in sec. 4, 53 PS sec. 2024: "When the contractor performing the work is to be paid by assessment bills, the lien shall exist for, and the claim shall be filed to, his use, and he shall under no circumstances have recourse to the municipality authorizing the work."

The present charter act of the City of Philadelphia (Act of June 25, 1919, P. L. 581) provides, inter alia, "Every contract involving an appropriation shall designate the item on which it is founded, and shall be numbered by the city controller in the order of its date, and charged as numbered against such item, and so certified by him before it shall take effect as a contract ......" (Art. XII. sec. 4, 53 PS sec. 3170) and "All contracts relating to the affairs of such city shall be in writing, signed and executed, in the name of the city, after due notice, by the officer authorized to make the same, and, in cases not otherwise directed by law or ordinance, such contracts shall be made and entered into by the mayor ...... All contracts shall be countersigned by the city controller, and filed and registered

by number, date and contents in the mayor's office, and attested copies furnished to the city controller and to the department charged with the work." (Art. XX, sec. 1, 53 PS sec. 3361).

It was essential, therefore, to the making of a valid contract between the city and the plaintiff that the contract should be countersigned by the City Controller, and numbered by him and charged as numbered against the item in the appropriation on which it was founded, and that it be so certified by him, before it took effect as a contract. The plaintiff was an experienced contractor in city work and had full knowledge of this requirement.

The contract in question was signed by the mayor, on behalf of the city and by the plaintiff as contractor, on or about October 23, 1931; but it was not countersigned, numbered, and certified by the city controller, as required by the city charter, in order to take effect as a contract, until March 19, 1934, when it was countersigned by him and numbered 1374, and he certified that $750 had been charged against appropriation item No. 471 Loan, of Consolidated Loan Fund, created by Ordinance of October 26, 1929, for Paving.

After the contract agreement had been signed by the mayor and the plaintiff, but before it had become a valid contract of the city by being certified and countersigned by the controller, the plaintiff proceeded to do the work and completed it on November 19, 1931. In April, 1934 after the controller had certified and countersigned the contract, the plaintiff received from the city a warrant for $750 and accepted assessment bills against the properties abutting and fronting on the paved street, for the balance of the contract price, $4650. It succeeded in collecting the assessment bills from all but three property owners, who, although owners of assessable property fronting on the improvement, refused to pay, because sections 3 and 9 of the

Act of May 16, 1923, P. L. 207, regulating the filing, etc. of liens for municipal claims imposed or assessed against property, require that such claims be filed in the court of common pleas within six months from the time the work was done in front of the particular property, where the charge against the property is assessed or made at the time the work is authorized, or within six months after the completion of the improvement, where the assessment is made by the municipality upon all the properties after the completion of the improvement. As the entire work had been completed on November 19, 1931 and therefore the work in front of each particular property must have been done by that time, these three property owners contended that municipal claims for this work, in order to be valid liens against their properties had to be filed in the court of common pleas by May 19, 1932, and as these assessment bills were not *issued* until April, 1934, they would not be legal and enforceable liens against their properties fronting on the improvement. The plaintiff, apparently, accepted this view and thereupon brought this action against the city for the sum of these three claims or assessment bills, to wit, $576.32.

In our opinion, the case is ruled against the appellant by the recent decision of the Supreme Court in *Hollenbach v. Hadley,* 312 Pa. 176,.179, 180, 167 A. 574, where, speaking through Mr. Justice SCHAFFER, it said: "The expression 'at the date of the execution thereof' means at the date of the completed execution, that is to say, by the controller, as well as by the mayor. As by the specific provisions of the Charter Act (Article XII, section 4) the contract does not take effect until certification by the controller, the words 'execution thereof,' even as used in the ordinance, relate to the date of certification as defining the time of the execution of the contract." See also, *Hepburn v. Phila.,* 149 Pa. 335, 24 A. 279; *Smart v. Phila.,* 205 Pa. 329, 54 A. 1025; *Union*

*Paving Co. v. Phila.,* 263 Pa. 577, 107 A. 370; *Hinkle v. Phila.,* 214 Pa. 126, 63 A. 590; *Anders v. Phila.,* 235 Pa. 125, 83 A. 939.

Appellant has cited to us a number of cases which it contends sustain its right of recovery against the city in this action, but they are all distinguishable on the facts from this case.

It may be that in the situation of affairs existing in October, 1931, the duty of the city controller to certify and countersign the contract might have been held to be purely ministerial, and if he had refused to certify and countersign it, the court in mandamus proceedings, would have compelled him to do so, *(Com. v. Phila.,* 176 Pa. 588, 35 A. 195; *Com v. Larkin,* 216 Pa. 128, 64 A. 908; *Mark Construction Co. v. Hadley,* 290 Pa. 544, 139 A. 157); but that is assuming that the situation in October, 1931 was the same as in March, 1934. On the other hand, unless there was an appropriation available and not already allotted to prior contracts, the controller could not be compelled to countersign and certify it: *Hollenbach v. Hadley,* supra. In any event, the way to make it a valid contract, if the controller refused to certify and countersign it, was to compel him to do so by mandamus proceedings. Until he did so, there was no valid contract, and because he might, possibly, have been compelled by mandamus to certify and countersign it, did not justify the plaintiff in proceeding to do the work before it had taken effect as a contract. The certificate of the controller on March 19, 1934, over two years after the work was completed, did not validate the assessment bills, which had to be issued and filed within six months after the completion of the work, but could not be issued until the contract was executed and in effect. The contractor knew that the city had formally and definitely disclaimed all liability for the cost of this work, except for $750 for paving in front of non-assessable properties and at street inter-

sections, and the contractor had just as formally and definitely agreed that it would accept assessment bills against the properties abutting and fronting on the improved street in payment of the balance, and that it (the contractor) would accept and assume the risk of the failure to collect such assessment bills, whether such failure should be due to the invalidity of said bills or to any other cause, and that no recourse should be had against the city for said bills or any part thereof. It was therefore incumbent on the contractor itself, to take no step which would render the assessment bills invalid or unenforceable as liens against the properties abutting and fronting on the street. By starting and completing the work before the agreement to do the paving had taken effect as a valid contract, and by overlooking or neglecting to get the controller to certify and countersign it until more than six months had elapsed after the work was done and completed, the plaintiff prevented the assessment bills from being enforceable as liens against the properties abutting and fronting on the streets, and has no one but itself to blame for its failure to collect them. There is no reason, either in law or morals, why the consequences of its premature action or its neglect should be visited on the city rather than be borne by itself.

In the cases cited by appellant where a recovery was allowed against the municipality because of the negligence of its officers in collecting the liens or improvement bonds[1] (*Price v. Scranton,* 321 Pa. 504, 184 A. 253; *Dime Bank v. Scranton,* 208 Pa. 383, 57 A. 770) there was not only a difference from this case in the language providing for the issuance of such assessment

---

[1] The distinction between asssessment bills and improvement bonds is noted in *York City v. Eyster,* 68 Pa. Superior Ct. 104, 115, KEPHART, J., where the contractor was to be paid by bonds and the assessment bills or claims were to be filed and collected by the city.

bills or improvement bonds, but also the primary distinction, that in those cases the liens rested on a valid and binding contract in force and effect when the work was done, and were valid and enforceable when filed, and were not collected only because of the neglect of the city authorities; or, because of the negligence of the city solicitor, they were not filed by him within six months, as provided in the contract (*O'Hara v. Scranton*, 205 Pa. 142, 54 A. 713); or the assessments were illegal because of some act, oversight or neglect of the city council in enacting the ordinance (*Gable v. Altoona*, 200 Pa. 15, 49 A. 367); or there was a failure of council to make an adequate assessment (*Nolan v. Reading City*, 235 Pa. 367, 84 A. 390; *Vulcanite Paving Co. v. Phila.*, 239 Pa. 524, 86 A. 1086). But in every case where the municipality was held liable for the negligence of its officials in the assessing, filing or collection of the claims, the work had been done under and in pursuance of a valid contract in force and effect when it was performed.

Nor are we helped by *Phila. & R. C. & I. Co. v. Coal Twp.*, 311 Pa. 236, 166 A. 772, and *Bailey v. Phila.*, 167 Pa. 569, 31 A. 925, and similar cases, where taxpayers' bills were filed to prevent the municipality from assuming what it felt to be a moral obligation. The City of Philadelphia has satisfied its moral obligation in paying plaintiff the $750 payable by it under the contract; it has not felt any moral obligation to pay the amounts assessable against abutting property and has not legally assumed it. See Art. XVII, sec. 10, of the Charter Act of 1919, 53 PS sec. 3280. The persons benefited by the plaintiff's paving, in the absence of a contract, were the property owners who refused to pay the bills, rather than the city.

The present action against the city cannot be maintained because, when the work was done, the plaintiff had no valid contract with the city, and having chosen

to do the work in advance of a legal and binding contract it assumed the risk of collecting the cost of it from those benefited by it, and has only itself to blame if they refuse to pay the cost which could have been legally collected from them as abutting property owners, if the plaintiff had waited to do the work until there was a valid contract for its performance.

Judgment affirmed.