HOLT LUMBER COMPANY, Appellant, vs. CITY OF OCONTO
and another, Respondents.

*February 22—March 14, 1911.*

*Constitutional law: Legislative power: Delegation: Option laws: Mu-
nicipal corporations: General charter: Sewers: Methods of con-
struction, etc.: Taxation: Quieting title: Cloud: Complaint con-
strued.*

1. An option law, to be valid, must be a complete enactment in itself
when it leaves the legislature and require nothing to perfect it
as a law, the only thing left to the people to determine being
whether they will avail themselves of its provisions.
2. The general city charter is an option law in that any city may
adopt it or a part of it, but there is no option in the adminis-
tration of the law after its adoption. Where a city has adopted
a particular subchapter, it is bound thereby and cannot abro-
gate it or any of its provisions.
3. Subch. XX of the general charter (secs. 925—208 to 925—239c,
Stats. 1898), relating to the construction and maintenance of
sewers and the manner of paying therefor, was designed as one
system with authority on the part of the city adopting it to take
advantage of the different provisions as occasion might require;
and the passage of an ordinance providing that the expense be
borne by sewer districts does not preclude the city from after-
ward making the cost of similar improvements payable out of
the general fund or by abutting property owners, and it may at
will make use of all three methods at the same time.
4. The fact that under said subch. XX a property owner who has
been taxed for the construction of sewers under the district sys-
tem may, by a subsequent change to the city system, be taxed
again for building main sewers in other districts, does not ren-
der the law invalid as contravening sec. 1, art. VIII, Const., pro-
viding that the rule of taxation shall be uniform.
5. In an action by a taxpayer to set aside certain taxes as a cloud on
his title, a complaint alleging that a specific sum was assessed
for main sewers, although it further alleges that the report of
the board of public works which was adopted included exten-
sions and the rebuilding of branch sewers and the taking up of
certain main sewers and relaying the same with larger and dif-
ferent sewers, there being no positive statement that any sum
other than the specific sum named was spread upon the tax roll

or became a cloud on plaintiff's title, is *held*, on demurrer, not to show that any tax was levied against plaintiff's land for other purposes than the construction of main sewers or extensions thereof, which alone were chargeable to the general fund.

6. Allegations in such complaint that an ordinance which provided generally for the construction and maintenance of sewers at the expense of sewer districts was repealed by a later ordinance which provided for the cost of main sewers to be paid out of the general fund, are not to be construed as charging that no authority remained in the city to pay for any except main sewers.

APPEAL from an order of the circuit court for Oconto county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought to remove a cloud from the title to plaintiff's land created by the assessment and levy of certain taxes upon its real estate in the year 1909 to pay for the construction of sewers proposed to be laid by the defendant city, on the ground that the proceedings of the common council and its officers in the assessment and levy of such taxes were illegal and void and the taxes based thereon consequently illegal and void.

The complaint alleges the corporate existence of the plaintiff and of the defendant city, and that the defendant *Classon* is city treasurer of the defendant city; that the plaintiff is the owner of the lands in question; that the taxes assessed against the real estate of plaintiff in said city for 1909 are $2,081.04; that the taxes levied upon personal property of plaintiff for 1909 in said city are $10,231; that in August, 1894, by ordinance No. 204, said defendant city was divided into sewer districts; that in May, 1895, by ordinance No. 212, ordinance No. 204 was amended; that on the 3d day of September, 1895, the defendant city, in pursuance of sec. 72, ch. 312, Laws of 1893, and in compliance with the statutes of Wisconsin, passed and adopted ordinance No. 215, whereby said defendant city adopted as part of its charter law subch. XX (secs. 925—208 to 925—239c, Stats. 1898) entitled "Sewers;" that in the month of November, 1904, the defendant

city passed an ordinance, No. 277, by the terms of which it adopted the sewer district plan for construction of sewers and provided that the expense should be borne and paid out of the funds of the sewer district within which such sewer or sewers might be constructed; that on February 7, 1905, the defendant city adopted ordinance No. 280, dividing defendant city into sewer districts, which ordinance provided that the cost of constructing and maintaining sewers (which shall include mains, intercepting and all street sewers, manholes, catch-basins, lantern holes, flush tanks, out-falls, and all work connected therewith, except house drain connections) should be borne as provided by ordinance No. 277; that afterwards defendant city constructed and maintained sewers in the sewer districts of said city in pursuance of ordinance No. 277, and paid for the same out of the sewer district funds; that the property of residents and property owners in each sewer district was taxed for the purpose of raising funds for the mains and other sewers laid and constructed in each respective sewer district; that plaintiff was assessed and paid taxes upon its property for such sewers under said district system in accordance with ordinance No. 277; that on October 5, 1909, the defendant city attempted to pass ordinance No. 318, which provided that "the cost of all main sewers hereafter constructed in the city of *Oconto,* except the cost of all catch-basins, overflow pipes, and all temporary catch-basins, the cost of repairing and cleaning of all sewers, and the expenditures for temporary work necessary to carry on the system of sewerage in the city of *Oconto,* shall be paid out of the general fund of the city of *Oconto,* the intention of this ordinance being that no expense of the construction of main sewers shall be paid by the abutting property owners or out of any sewerage district fund;" that said ordinance No. 318 attempted to repeal ordinance No. 277 and sec. 2 of ordinance No. 280 of defendant city and attempted to repeal all ordinances conflicting with ordinance No. 318; that on November 30, 1909, the

board of public works of defendant city made a report to defendant city whereby it recommended that a levy of $4,014.40 be made out of the general fund of defendant city to cover the cost of main sewers to be constructed on certain designated streets; that said report was adopted and the tax of $4,014.40 levied upon the taxable property of defendant city and the clerk instructed to extend the same upon the tax roll; that the report of said board of public works included not only main sewers but the construction and extension and rebuilding of branch sewers and the taking up of certain main sewers in defendant city and relaying the same with larger and different sewers; that said sum of $4,014.40 was assessed and levied upon the taxable property in defendant city, including the property of plaintiff, and constitutes a part of the so-called "contingent fund" upon the tax roll, which contingent fund amounts to $14,906.30; that the tax roll has been delivered to the defendant *Classon*, treasurer of defendant city, for collection, and that he threatens to collect and return said tax roll, if said taxes are not paid, as delinquent and unpaid; that said tax constitutes a cloud upon the title to plaintiff's real estate; that said taxes, amounting to $4,014.40, so forming a part of the contingent fund, were unlawfully levied, for the reason that the defendant city had theretofore elected, and by ordinance duly passed and adopted determined, that all the costs and expenses for the laying and construction of main and other sewers in the defendant city should be borne and paid out of the sewer districts within which such sewers were laid, and that the city had no power to thereafter change the system of paying for the construction and maintaining of main and other sewers and to assess and levy taxes for and to pay the same out of the general or contingent fund of defendant city; that plaintiff is ready and willing to pay its just portion of the taxes legally and lawfully levied and assessed against its real estate; that the defendant city and its officers threaten and are about to carry into effect the recommenda-

tion of the board of public works for the construction of main
and other sewers above mentioned; that if defendant city pro-
ceeds to construct such sewers it will result in imposing upon
the lands of the plaintiff the unlawful burden and taxes for the
payment of sewers in other sewer districts than those in which
the plaintiff has property and which such sewer districts have
heretofore constructed and paid for the main and other sew-
ers within such district or districts out of the sewer district
fund of such district.

The plaintiff prays that the city be enjoined from collect-
ing said taxes and that such taxes be declared null and void
and the cloud created thereby be removed and ordinance
No. 318 be adjudged null and void; that the court ascertain
the amount of taxes lawfully assessed upon the plaintiff's real
estate; and that plaintiff have general relief.

The defendants demurred to the complaint for want of
facts sufficient to constitute a cause of action. From the
order sustaining such demurrer this appeal was taken.

For the appellant there was a brief by *Allan V. Classon*
and *Eastman & Martineau,* and oral argument by *Mr. Clas-
son* and *Mr. E. C. Eastman.*

For the respondents there was a brief by *P. H. Lynch,* city
attorney, and *V. J. O'Kelliher* and *Gill & Chase,* attorneys,
and oral argument by *Mr. J. J. Gill* and *Mr. O'Kelliher.*

KERWIN, J.    The material allegations of the complaint, in
so far as they form a basis for the plaintiff's alleged right to
recover, are set out briefly in the statement of facts.    The
learned trial judge in sustaining the demurrer wrote an opin-
ion, which is in the record, in which he discusses various pro-
visions of subch. XX of the general charter law (secs. 925—
208 to 925—239c, Stats. 1898) as they bear on the ordinances
passed by the defendant city, and arrives at the conclusion
that the complaint states no cause of action, and we are of
the opinion that the conclusions reached by the trial judge are
correct.

Two main contentions are made by appellant's counsel as grounds for reversal of the order appealed from: (1) That sec. 925—208, being the first section of subch. XX, is an option law, and that when the city exercises its option thereunder and elects one of the methods of payment for sewers its power in that regard is exhausted and it cannot change to any of the other methods provided therein; and if the statute permits the change it is unconstitutional. (2) That if it be held that sec. 925—208 is not an option law and that the statutes in question are constitutional, there is no authority for payment for any sewer work other than for main sewers, and that the tax is void because levied for sewers other than main sewers.

The defendant city was divided into sewer districts under its special charter in May, 1895, by ordinance No. 212, and subch. XX of the general charter was adopted in September, 1895. In November, 1904, ordinance No. 277 was passed, which provided that the cost of all sewers should be paid out of the funds of the sewerage district within which the sewer or sewers may be constructed. In February, 1905, the defendant city passed ordinance No. 280, which divided the city into sewer districts and amended the prior ordinance and confirmed the method of paying for constructing and maintaining sewers as provided by ordinance No. 277. Afterwards and in October, 1909, ordinance No. 318 was passed, which provided that the cost of all main sewers thereafter constructed, except the cost of catch-basins, overflow pipes, and temporary catch-basins, the cost of repairing and cleaning sewers, and the expenditures for temporary work necessary to carry on the system of sewerage, should be paid out of the general fund, the intention being that no expense for the construction of main sewers should be paid by abutting property owners or out of any sewerage district fund.

It is strenuously insisted by counsel for appellant that the defendant city had no power to pass ordinance No. 318, because it had no authority to change the method of payment for

sewers,—that its power in that regard, having been exercised by the passage of a prior ordinance, was exhausted.    Counsel relies upon *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460; *State ex rel. Williams v. Sawyer Co.* 140 Wis. 634, 123 N. W. 248, and some Pennsylvania cases; also *Atlantic City W. W. Co. v. Atlantic City,* 39 N. J. Eq. 367, and *East Tenn., Va. & Ga. R. Co. v. Frazier,* 139 U. S. 288, 11 Sup. Ct. 517.    A careful examination of the cases cited convinces us that they do not support the appellant's contention.    The *Northern T. Co. Case* deals with a situation clearly involving an option law, namely, a general law pertaining to county government, giving an option to county boards to severally put the same into effect in their respective counties, and giving no power to repeal their action and restore the former situation, and it was held that, the county board having given effect to the law, it could not abolish such effect.    In other words, the case holds that power to give effect to an option law does not carry with it by implication power to abolish it.    In *State ex rel. Williams v. Sawyer Co., supra,* the county board passed a resolution adopting the provisions of ch. 651, Laws of 1907, relating to the establishment of special municipal courts in the counties of this state, and it was held that it could not afterwards rescind its action.    At page 641 the court said:

"If the law had been properly adopted and the proper resolution had been passed creating the court, it would be beyond the power of a county board by subsequent resolution to rescind its action, at least in the absence of express legislative authority so to do."

This court has ruled that an option law "must be a complete enactment in itself.    It must contain an entire and perfect declaration of the legislative will, and it must require nothing to perfect it as a law.    The only thing that may be left to the people to determine is whether they will avail themselves of its provisions." *State ex rel. Williams v. Sawyer Co., supra*

(p. 636); *State ex rel. Att'y Gen. v. O'Neill,* 24 Wis. 149; *Slinger v. Henneman,* 38 Wis. 504; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Commission,* 136 Wis. 146, 116 N. W. 905; *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869.

Sec. 926, Stats. (1898), as amended (Laws of 1899, ch. 51: Supp. 1906), provides:

"All cities incorporated by special act shall have the powers, privileges and franchises and be subject to the duties and liabilities in this chapter provided for, as well as those applying to specially incorporated cities in chapters 40a and 41, in addition to those provided by the act of incorporation, all conflicting provisions of such special act to the contrary notwithstanding. . . . Any such city may adopt the provisions of any subchapter, section or subdivision of any section of chapter 40a, and may exercise any power or franchise thereby conferred upon cities organized under said chapter, in addition to or in lieu of the provisions of its special charter and the powers and franchises therein specified, by an ordinance adopted for that purpose by a three-fourths vote of all the members of the council elect, and when adopted as herein prescribed such ordinance shall operate to that extent as an amendment of such charter. . . ."

The feature of the law in question which gives it character as an option law is the right conferred to allow adoption of the general charter or a part of it and not an option in the administration of the law after adoption. After subch. XX of the general charter was adopted by defendant city it was bound by it and could not abrogate it. *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. The defendant city could not say it would be bound by some of the provisions adopted and not by all. When it exercised its option it exhausted its power. There is nothing in the law indicating an intention on the part of the legislature to delegate power to the defendant city to reject any provision of subch. XX or modify it after it had been adopted, even if the legislature had power to delegate such authority to the city.

This court has decided, in a case respecting the adoption

of a portion of the general charter, that an option law must be a complete law in all its details when it leaves the legislature, so that nothing is left open save the determination of the fact when it is to go into effect; that any other rule would result in practical delegation of legislative power.

"If the governing body of a municipal corporation can take such parts as it chooses from a complete law, and reject such parts as it chooses, the result will be, not the law which the legislature has enacted, but a law which the corporation has enacted. In such a case the legislature has never said that the parts chosen by the corporation should constitute a law, standing by themselves, but the governing body of the corporation has said so. This must be legislation, or it is nothing; and, if it be legislation, it is legislation by the municipal corporation, and not by the legislature." *State ex rel. Boycott v. Mayor, etc.* 107 Wis. 654, 84 N. W. 242.

Now it seems plain that when the defendant city adopted subch. XX, which is a complete enactment, it had exhausted its power so far as the subchapter adopted was concerned under the doctrine of the cases heretofore cited, and that the ordinances providing for the construction of sewers were acts of administration under the subchapter after its adoption. As we understand the argument of appellant it is contended that subch. XX provides three modes of constructing and maintaining sewers, namely: (1) by the city at large; (2) by sewer districts; and (3) by abutting property owners. And it is argued that when the first ordinances were passed, providing for the payment by districts, the city could not afterwards change to any other system, because it had exhausted its power in that regard. We think a careful reading of subch. XX will show that it was designed as one system, and not three, with authority on the part of the city adopting it to take advantage of the different provisions as occasion might require, and that the exercise of one method did not eliminate the other methods. In other words, it was the manifest intention of the legislature, as shown by the different sections of the

statute, that all three methods might be used at the same time. Therefore the right vested in the city by adoption of subch. XX was the right to exercise the three methods. We shall briefly refer to some of the provisions of the law which show that the three methods prescribed were calculated to be used together.

The first section of subch. XX, sec. 925—208, Stats. (1898), provides that "All cities shall have full power to construct systems of sewerage and to provide for the payment for sewers by the city, by sewerage districts, or by abutting property owners." This section further provides that no city shall enter upon such construction until it shall have been divided into sewerage districts and a plan adopted in the manner specified, and that the section shall not apply to cities already divided into sewerage districts which have adopted a sewerage system. Sec. 925—218 of subch. XX provides that the cost of all sewers in street and alley crossings and of all sewers in excess of $2 per linear foot chargeable to lots and lands as provided in sec. 925—216, of all catch-basins receiving water from gutters and of the overflow pipes connecting them with sewers, of all temporary catch-basins, of repairing and cleansing of sewers and all expenditures for temporary work necessary to carry on the system of sewerage, and all the cost of constructing sewers not provided for by special assessment, shall be paid for out of the fund of the proper sewerage district, and that "The cost of constructing the main sewers within the city limits or extending beyond the same may be paid for in whole or in part by the city out of the general fund or out of the funds of the proper sewerage district, or by abutting property owners, as the council shall by ordinance direct." Sec. 925—215 provides that "Such contract may, at the option of the city, except as herein otherwise provided, require the contractor to receive as payment for so much of the work as has been assessed against the lots opposite to the front of which any such sewer shall extend, certifi-

cates against such lots respectively, or improvement bonds, and the residue of such contract shall be paid out of the proceeds of the general sewerage tax to be levied on the real estate and personal property within the sewerage district by the council on the recommendation of the board of public works." Sec. 925—216 provides that "After any contract for work under this subchapter, to be paid for in whole or in part by such assessment, shall have been entered into, the board of public works . . . shall make an assessment against all lots . . . fronting or abutting on the work so contracted to be done. . . ."

These provisions clearly recognize that different methods may be followed at the same time and are inconsistent with the option theory contended for by appellant, since it is provided that the expense of sewers not assessed against adjoining lots must be paid out of the sewerage district fund, except the cost of main sewers, and all main sewers also unless the council provides for payment of main sewers in whole or in part by the city or by the owners of the abutting lots.

Sec. 925—216 as amended (Laws of 1901, ch. 215, sec. 1: Supp. 1906) provides that not more than $2 per linear foot of frontage shall be assessed against any lot; and sec. 925—218, Stats. (1898), provides that the cost of all sewers in street and alley crossings and the excess of $2 per linear foot, catch-basins, and construction of sewers not provided for by special assessment shall be paid out of the fund of the proper sewerage district; also provides that the cost of constructing main sewers within the city or extending beyond may be paid in whole or in part by the city out of the general fund or out of the funds of the proper sewerage district, or by abutting property. Secs. 925—231, 925—232, and 925—233 provide for the filing of plans of sewerage for the several districts, and provide that such plans may be changed from time to time as occasion or the exigencies may demand, and that when changes have been determined upon, if such changes render useless any existing sewers the expense of such change

shall be paid out of the general fund.   Sec. 925—239 provides that in case the council shall decide to amend its system or adopt a new one it may proceed in the mode prescribed "in this subchapter or by the law in pursuance of which such sewer or sewers were constructed, . . . or in the discretion of the council it may cause the whole cost of such construction, alteration or change to be borne by the city, or to cause such portion of the estimated cost of construction, alteration or change of sewers as it shall designate to be borne by the city and the balance to be assessed upon the lots or parcels of land which may be benefited. . . ."

We are convinced that the contention of the appellant on the option theory is not tenable, and that subch. XX, upon its adoption by the defendant city, became a part of the city's charter and all provisions of it continued in full force; and that the adoption of one method of construction and maintaining sewers in no way abrogated the right of the city to avail itself of any other method or of any provision of the subchapter adopted.

It is argued by counsel for appellant that if the option theory which they contend for cannot be sustained the law is unconstitutional, because it imposes an unjust burden upon the appellant in that it paid for sewers under the district system as provided by ordinance No. 277, which imposed the burden on appellant of paying for "main and other sewers," and to compel it to pay for mains under another method would be imposing an unjust and inequitable burden and amount to double taxation, thereby destroying the rule of uniformity in taxation, and would be unjust discrimination and violative of sec. 1, art. VIII, of the constitution of the state of Wisconsin, which provides that the rule of taxation "shall be uniform."   We do not regard it necessary to enter into any lengthy discussion upon the constitutionality of subch. XX. Obviously the various provisions relating to the different methods of payment as heretofore construed were designed by the legislature to aid in getting at as equitable a distribution

of the burden as might be, and it does not appear that the law violates any constitutional provision.   Some inequity of burdens may result in special assessments under the most perfect law, and some injustice be done, but that is not sufficient to warrant the court in declaring a law unconstitutional.   We think the contention is ruled against the appellant by this court in numerous cases, some of which we cite.   *Weeks v. Milwaukee,* 10 Wis. 242; *Warner v. Knox,* 50 Wis. 429, 7 N. W. 372; *Blount v. Janesville,* 31 Wis. 648.

It is further insisted by counsel for appellant that there is no authority in law sufficient to warrant payment for any sewers or sewer work, other than for main sewers, out of the general fund, and that the tax is therefore illegal, since it was levied and extended upon the tax roll for the purpose of paying for sewers other than main sewers.   This contention is based upon the report of the board of public works, referred to in the complaint, viz.:

"That the report of the said board of public works of the city of *Oconto* hereinbefore referred to and the estimates of the city engineer therein referred to embraced and included not only the construction of main sewers but also the construction of extensions and the rebuilding of branch sewers and the taking up of certain main sewers in the city of *Oconto* and the relaying of the same with larger and different sewers, as will appear from the said report of the board of public works and from the estimates of the city engineer referred to therein and on file with the city clerk of the city of *Oconto,* and that the said city of *Oconto* adopted the said report of the board of public works and the estimates of the said city engineer, and levied the tax in accordance therewith, as hereinbefore alleged."

It is further alleged in the complaint that the sum of $4,014.40 was assessed and levied on the taxable property in the defendant city, including the property of the plaintiff, and was extended on the tax roll and formed and constituted a part of the so-called "contingent fund," which fund amounts to $14,906.30.   Now this point turns upon the proper con-

struction of the allegations of the complaint above quoted. It is argued that the plaintiff alleges that the tax levied is not for main sewers but includes other expenditures. It is flatly alleged in the complaint that $4,014.40 is assessed for main sewers. But it is further alleged that the report of the board of public works, which was adopted, includes extensions and the rebuilding of branch sewers and the taking up of certain main sewers and relaying the same with larger and different sewers. There is no positive allegation that any sum other than the $4,014.40 was spread upon the tax roll or became a cloud upon plaintiff's property. Nor does the allegation that money was included in the contingent fund reported for levy by the board of public works show that it was for payment of sewers other than main sewers and the rebuilding of branch sewers. The extensions referred to in the report were doubtless extensions of main sewers. At least the allegations of the complaint are capable of the construction that nothing was included in the report as a tax against plaintiff's property except taxes for payment of such sewers. Clearly it does not appear that any sum not chargeable to the general fund was assessed and levied upon the taxable property of the city, including the property of the plaintiff.

It is further insisted that since the passage of ordinance No. 318 the defendant city is without authority for the payment of any except main sewers. There is no allegation in the complaint to the effect that no ordinance exists authorizing the city to proceed with a sewer system. Conceding that ordinance No. 277 was repealed by ordinance No. 318, it does not appear that other ordinances did not exist granting the authority, nor even that ordinance No. 318 did not give such authority.

We conclude that the complaint states no cause of action, and that the order sustaining the demurrer was right and should be affirmed.

*By the Court.*—The order appealed from is affirmed.