ELIZABETH HUFF v. CITY OF WICHITA FALLS ET AL.

No. 5298. Decided April 6, 1932.
(48 S. W., 2nd Series, 580.)

282

*Mathis & Caldwell* and *J. T. Montgomery,* all of Wichita Falls, for appellants.

A municipal paving assessment ordinance, assessing, against the abutting property owner, more than three-fourths of the total cost of improving a street by paving, is void. R. S., art. 1090; Sullivan v. Roach-Manigan Paving Co., 220 S. W., 444; Griffin v. City of Waxahachie, 276 S. W., 201.

*Thelbert Martin, Milburn E. Nutt* and *R. Wayne Frank,* all of Wichita Falls, for appellees.

The intention of the Legislature is more clearly reflected by the special statute than by the general one. Hunt v. Atkinson,

12 S. W. (2d) 142 (Comp. App.); Fortinberry v. State, 288 S. W., 146 (Com. App.).

"Conflict between statute and home rule provisions. The provisions of home rule charters supersede all those of the state in conflict with such charter provisions in so far as such laws relate to purely municipal affairs." 43 Corpus Juris, par. 176, p. 179; Community Nat. Gas Co. v. Northern Tex. U. Co., 13 S. W. (2d) 184 (Ct. Civ. App.).

*J. J. Collins*, City Attorney of Dallas, *R. E. Rouer*, City Attorney of Fort Worth, *H. P. Abney*, City Attorney of Sherman, and *John McGlasson*, City Attorney of Waco, as amicus curiae.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case, pending on certified question, arose out of special assessments for street improvements levied by the City of Wichita Falls in 1926, prior to the enactment in 1927 of chapter 276, Acts of the Fortieth Legislature.

The City of Wichita Falls operates under a "Home Rule Charter" adopted under section 5 of article 11 of the Constitution and the Home Rule Enabling Act, Revised Statutes, 1925, articles 1165 to 1182. The charter was adopted by the voters of said city on March 30, 1920.

Section 16 of article 1175 in part declares that cities subject thereto shall have "exclusive dominion, control and jurisdiction in, over, and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city, and to provide for the improvement of any public street, alleys, highways, avenues and boulevards by paving, raising, grading, filling or otherwise improving the same and to charge the cost of making such improvement against the abutting property, by fixing a lien against the same, and a personal charge against the owner thereof, according to an assessment specially levied therefor in an amount not to exceed the special benefit any such property received in enhanced value by reason of making such improvement, and to provide for the issuance of assignable certificates covering the payments for said cost, provided that the charter shall apportion the cost to be paid by the property owners and the amount to be paid by the city, and provided further, that all street railways, steam railways or other railways, shall pay the cost of improving the said street between the rails and tracks of any such railway companies, and for two feet on each side thereof. The city shall have the power to provide for the construction and building of sidewalks and charge the entire

cost of construction of said sidewalks, including the curb, against the owner of abutting property, and to make a special charge against the owner for such cost and to provide by special assessment a lien against such property for such cost; to have the power to provide for the improvement of any such sidewalk or the construction of any such curb by penal ordinance and to declare defective sidewalks to be a public nuisance. The power herein granted for making street improvements and assessing the cost by special assessment in the manner herein stated shall not be construed to prevent any city from adopting any other method or plan for the improvement of its streets, sidewalks, alleys, curbs or boulevards, as it may deem advisable by its charter."

Section 112 of the charter of the City of Wichita Falls, relating to street improvements and assessments therefor, provided:

"Section 112.—After the hearing provided for in Section 109 of this Charter, the Board of Aldermen may, by ordinance, order such improvement of, in or on the street or other public place of the city designated in the resolution, declaring the necessity thereof. Any such ordinance may designate the material and methods for such improvement, and may provide for its construction, in the name of the city, either by contract or directly by the employment of labor and the purchase of material. Any such ordinance shall provide how the cost of any such improvement shall be paid, but in no event shall more than ninety-eight per centum (98%) of the cost of improvement, except sidewalks and curbs, be charged against such property owners or their property. The whole cost of sidewalks and curbs constructed in front of any property may be charged against the owner thereof or his property. Charges against benefited property for the construction of main sewers shall not exceed the sum of that, in the opinion of the Board of Aldermen, would be required to construct an ordinary street sewer or drain of sufficient capacity to sewer or drain the lots or lands within the district indicated for such improvement."

■ The rights and powers of the city over the subject under investigation were defined and governed by the quoted provisions of the statutes and charter until March 30, 1920. On that date the voters of the city adopted those provisions of the general statutes of the State commonly called the Street Improvement Act, embraced in Revised Statutes, arts. 1086 to 1105, which adoption became effective on September 2, 1920. The statutes thus adopted constitute a comprehensive code relating to street

improvements, the levying of special assessments therefor, and the creation and enforcement of liens securing the same. The adoption was authorized by article 1104 of the Revised Statutes, and plainly permitted or contemplated by the Home Rule Enabling Act. The last clause in section 16, above quoted, expressly declares that the powers granted by the Home Rule Enabling Act for making street improvements and assessing the cost "shall not be construed to prevent any city from adopting any other method or plan for the improvement of its streets, sidewalks, alleys, curbs or boulevards as it may deem advisable by its charter." That the voters had the right to adopt the Street Improvement Act as was done is also well settled by the reported cases. Spears v. City of San Antonio, 110 Texas, 618, 223 S. W., 166; Frankenstein v. Rushmore, 217 S. W., 189 (writ refused); Holt Lumber Co. v. City of Oconto, 145 Wis., 500, 130 N. W., 709; McQuillan on Municipal Corporations (2d ed.), vol. 1, p. 888. When the Street Improvement Act was adopted by the voters, it became a part of the charter of the city, to the same extent and with the same effect as if it had been made expressly a part of the charter in the first instance. 43 Corpus Juris, p. 158, sec. 139, p. 166, sec. 152.

R. S., art. 1088, one of the articles of the Street Improvement Act adopted by the City of Wichita Falls, regarding assessments for street improvements, reads:

"The cost for making such improvements may be wholly paid by the city, or partly by the city and partly by the owners of the property abutting thereon. In no event shall more than three-fourths of the cost of any improvement, except sidewalks and curbs, be assessed against such property owners or their property. The whole cost of construction of sidewalks and curbs in front of any property may be assessed against the owner thereof or his property."

The conflict between the terms of the adopted statute and the charter of the City of Wichita Falls is obvious. The conflict is recognized and the issue here involved is clearly stated by the appellees in their argument filed in this court, as follows:

"It will be clearly seen, therefore, that section 112 of the Home Rule Charter of Wichita Falls and article 1088 of the Street Improvement Act are repugnant and conflicting in the amount or quantum that the city can assess, and which controls and take(s) precedence is the question calling for solution before this Honorable Court, or, as stated by the Court of Civil Appeals in the question certified:

" 'Did the City of Wichita Falls have the authority to assess, by its council, 98% of the cost of the street improvement, against the abutting property owners, and their property, or was it limited to 75% of such cost?'

"Appellees contend that the City of Wichita Falls did have authority to assess by its Council up to 98% of the cost of the street improvement against the abutting property owners."

The appellants contend that the provisions of the charter have been superseded by the terms of the adopted statute, and that the city cannot assess against them more than three-fourths the cost of street improvements, as provided in Article 1088, quoted above.

■ We agree with the view of appellants. The Street Improvement Act, of which Article 1088 is a part, was adopted subsequent to the adoption of the charter of Wichita Falls, and being a law subsequently adopted, its necessary effect was to amend or supersede all charter provisions in conflict therewith. The general rule, from which there is no deviation, is that subsequently adopted laws in conflict with those previously enacted, when relating to the same subject, and occupying the same field, necessarily repeal, amend, or supersede previous enactments. 43 Corpus Juris, p. 158, sec. 139, p. 166, secs. 152, 153; McQuillan on Municipal Corporations (2d ed.), vol. 1, sec. 156, p. 440, vol. 2, secs. 875 and 886; Bullis v. City of Chicago, 235 Ill., 472, 85 N. E., 614; City of Springfield v. Postal Telegraph-Cable Co., 253 Ill., 346, 97 N. E., 672; Smelker v. Campbell, 165 Wis., 358, 162 N. W., 171; Holt Lumber Co. v. City of Oconto, 145 Wis., 500, 130 N. W., 709; Cunningham v. Mayor of Cambridge, 222 Mass., 574, 111 N. E., 409; Salter v. Burk, 83 N. J. L., 152, 83 Atl., 973; Crook v. People, 106 Ill., 237; Denver v. New York Trust Co., 229 U. S., 123; Pana v. Bowler, 107 U. S., 529; Tracy v. Tuffly, 134 U. S., 206.

43 Corpus Juris, sec. 152, cited above, succinctly states the rule as follows:

"Likewise it is generally held that the adoption by an existing municipality of the provisions of a general law repeals and supersedes such provisions, and only such provisions, of a former special charter as are inconsistent with or repugnant to the provisions of the general law."

■ In addition to the application of the elementary rule just referred to, which results in sustaining the contention of appellants, we direct attention to the fact that the Street Improvement Act, Revised Statutes, arts. 1086 to 1105, is a general

law, and when adopted, as in the instant case, becomes applicable to the city to the same extent as any other general law. Being a general law, when once adopted it becomes dominant, and all charter provisions in conflict therewith ineffective. The Constitution itself settles the question. Section 5 of article 11, the Home Rule Provision of the organic law under which the charter of Wichita Falls was created and adopted, in part declares:

"Cities having more than five thousand inhabitants may by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, *and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State."* (Italics ours).

The Home Rule Act contains the same limitation. Revised Statutes, art. 1165.

■ The courts have settled the question that charter provisions and city ordinances of home rule cities are not valid when in conflict with the general law of the State. McCutcheon v. Wozencraft, 116 Texas, 440, 294 S. W., 1105; City of Fort Worth v. Zane-Cetti, 278 S. W., 183 (Com. App.) ; City of Beaumont v. Fall, 116 Texas, 314, 291 S. W., 202 (Com. App.) ; Hunt v. Atkinson, 12 S. W. (2d) 141 (Com. App.) ; Brown v. Fidelity Inv. Co., 280 S. W., 567 (Com. App.).

Under the constitutions, statutes and decisions of the courts it is obvious that the provisions of Revised Statutes, art. 1088, adopted by the City of Wichita Falls, must prevail over the conflicting terms of the charter and ordinances of the city. Revised Statutes, art. 1105, does not militate against the conclusion. This article, after declaring that articles 1086 to 1096 and article 1104, and resolutions or ordinances passed in regard thereto, shall be cumulative of and in addition to existing laws pertaining to the making of street improvements, then declares:

"In any case in which a conflict may exist or arise between the provisions of said articles and the provisions of any law granting a special charter to any city in this State, the provisions of such special charter shall control."

The quoted portion of this article was originally enacted in 1909, when special charters were granted by the Legislature under then existing constitutional provisions, and at a time when the enactments of both general and special laws was within the legislative power, and its purpose was to make clear

that the adoption of the general law by a vote of the people was not intended to supplant or supersede a special law previously passed by the Legislature to govern the municipal corporation. The Legislature no doubt had the right to declare such a rule, since the subject matter of both classes of legislation was confided to it. The statute has been carried into the Revised Statutes for the reason that we still have cities operating under special charters to which its provisions might be applicable. However, it has no application to home rule cities, and could have none under the Constitution. In the first place, home rule cities are not incorporated by a special charter. The charter of a home rule city is not a special law nor a special charter. It is a freeholder's charter, granted and adopted under the general laws of the State. 43 Corpus Juris, p. 85, secs. 27, 28, 31, 32; Stern v. City of Berkeley, 25 Cal. App., 685, 145 Pac., 167; McQuillan on Municipal Corporations (2d ed.), vol. 1, p. 836. The charter of a home rule city is no more a special charter than would be the charter of a town or village incorporated under the general laws. In fact, home rule charters are framed and adopted under the general laws of the State. Revised Statutes, art. 1105 et seq. However, even if a home rule charter should be regarded as a "special charter" within the terms quoted of article 1165, the statute would not be interpreted to make the charter provisions prevail over the terms of article 1088 adopted by the City of Wichita Falls. This is so for the reason that the Constitution declares, as we have seen, that a home rule city cannot have charter provisions and ordinances in conflict with general laws. It is true that Wichita Falls was not compelled to adopt article 1088, and other articles of the Street Improvement Act, but having done so they became general laws applicable to her affairs, and no attempted reservation by statute of charter terms in conflict therewith can control against the constitutional mandate that the general laws must prevail.

We answer the certified question as follows:

The City of Wichita Falls did not have the authority, after the adoption of the Street Improvement Act, to assess 98% of the cost of the improvements against abutting property owners or their property, but was limited to 75% of such cost, as provided by Revised Statutes, art. 1088.