## CITY OF CORPUS CHRISTI ex rel. HARRIS v. FLATO et al.

### No. 9533.

Court of Civil Appeals of Texas. San Antonio.

March 20, 1935.

Rehearing Denied May 29, 1935.

E. B. Ward and C. D. Johns, both of Corpus Christi, and Moursund, Moursund & Bergstrom, of San Antonio, for appellant.

Fulbright, Crooker & Freeman and Charles A. Leddy, all of Houston, Kleberg & Eckhardt, of Corpus Christi, and W. P. Dumas, of Dallas, for appellees.

BICKETT, Chief Justice.

This suit was instituted on September 24, 1932, in the name of W. F. Harris and of the city of Corpus Christi upon the relation of W. F. Harris, as plaintiffs, against Edwin Flato and others, officers of the city of Corpus Christi, the Republic National Bank & Trust Company of Dallas, First National Bank in Dallas, Guardian Trust Company of Houston, Smith Bros., Inc., the "unknown owners and holders" of certain bonds, and the city of Corpus Christi. The objects of the suit were: (1) To cancel, $2,725,000 of waterworks revenue bonds, as well as the deeds of trust securing payment thereof, which were issued by the city for the construction of additions and improvements to a waterworks system, to recover all money paid as interest on the bonds, and to restrain the payment of further sums upon the bonds; (2) to recover damages on behalf of the city for alleged breach of contract by Smith Bros., Inc., with reference to the construction of a dam and reservoir and the purchase of easements on lands. The district court sustained a general demurrer and numerous special exceptions of the defendants to the petition, and dismissed the cause. This appeal by Harris, individually and as relator, presents for review the trial court's action in sustaining the general demurrer to the petition.

The fourth amended original petition alleged, in substance, as follows: That Harris was a resident citizen and property taxpayer of the city of Corpus Christi and a patron of its waterworks system; that the city was incorporated under a charter which was granted by special act of the Legislature in 1909 (Loc. & Sp. Laws, c.

33), and which has been amended from time to time by vote of the people pursuant to article 11, § 5, of the Constitution of Texas; that the city owned its waterworks system prior to 1909 and at all subsequent times; that the charter required the question as to construction of improvements and issuance of bonds, such as are involved in this suit, to be submitted to a vote of the qualified taxpaying voters; that the city commission entered into a contract with Smith Bros., Inc., on July 21, 1927, for the construction of a dam and storage reservoir on the Nueces river, a filtered water reservoir, a pumping station, and a steel water tower, and for the advancement of funds for the purchase of lands for the reservoir above the dam; that on July 21, 1927, the city executed and delivered to Republic Bank & Trust Company of Dallas, trustee, bonds of the city in the amount of $2,000,000 and a deed of trust, providing for payment of the bonds only out of the revenues of the waterworks system, creating a lien upon the entire waterworks plant, including the contemplated improvements, and the income thereof to secure the payment of the bonds, and reciting the representation of the bondholders by the trustee with respect to the assertion of any right of action or the defense of a suit without the necessity of notice to, or joinder of, any bondholder; that, on August 1, 1928, the city executed and delivered to City National Bank of Dallas, trustee, bonds of the city in the amount of $350,000 and a deed of trust, all of like tenor and effect as the original bonds and original deed of trust, except as to amounts, maturities, and name of trustee; that on September 1, 1929, the city executed and delivered to Republic National Bank & Trust Company of Dallas, trustee, bonds of the city in the amount of $375,000 and a deed of trust, all of like tenor and effect as the original bonds and original deed of trust, except as to amounts, maturities, and name of trustee; that, on November 1, 1929, the city executed and delivered to Guardian Trust Company of Houston, trustee, refunding bonds of the city in the amount of $725,000 and a deed of trust, all of like tenor and effect as the original bonds and original deed of trust, except as to amounts, maturities, and name of trustee, for the purpose of refunding the issues of $300,000 and $375,000 respectively; that on March 1, 1933, the city and each of the trustees, respectively, executed supplemental indentures, the provisions of which were not alleged in the petition, but which are shown by the briefs and the remarks of counsel on oral argument to have been agreements for the subordination of the liens to a new lien in favor of Reconstruction Finance Corporation to secure payment of $450,000 or $500,000 borrowed for the reconstruction and repair of the dam partially destroyed by flood; that each of the series of bonds, deeds of trust, and supplemental indentures was executed and delivered without being submitted to a vote of the qualified taxpaying voters of the city, and none of them was executed for payment of purchase money or for extensions or for refunding any existing valid indebtedness of the waterworks system; that the bonds were nonnegotiable, and the holders of them are not innocent purchasers thereof; that Smith Bros., Inc., entered into the construction contract with the city with the intention not to complete it in accordance with the plans and specifications, and did, in fact, fail to comply with the contract with respect to clearing the area above the dam of trees and brush, compressing embankments with rollers, driving piling to sufficient depth, and preventing seepage beneath the dam, and doing, or failing to do, other things unknown to plaintiff; that Smith Bros., Inc., falsely represented to the city that it had properly constructed the improvements, and thereby obtained the acceptance of the work and the delivery of the bonds; that in the latter part of 1930 the dam, under conditions that it should have withstood if properly constructed, washed away and was practically destroyed and became worthless to the city; that "those acting for said city in the purchase of the above mentioned lands" (without identifying such agents), although obligated to obtain fee simple title or unencumbered easements, purchased easements with limitations and conditions attached thereto, as paying taxes and building and maintaining roads and bridges; that Smith Bros., Inc., with knowledge that the easements were not such as required, advanced the money for purchase thereof; that the city commission wrongfully accepted the easements and the improvements; that the plaintiff, Harris, had no occasion to learn the facts and could not have known them and did not know them until after the bonds had been delivered and the dam had been washed away; that the bonds were fraudulently procured and are void, as are, also, the purported liens; that the plaintiff is entitled to a decree restraining the payment of the bonds; that

the city has illegally made payments (interest) upon the bonds, for the repayment of all of which the defendants are liable; that the defendants are liable for all damages caused by the acts complained of; that the city authorities are continuing wrongfully to levy and collect water charges for the purpose of paying the bonds, and will in the future continue so to do; that "they have failed and refused to take any action to restrain the collection of said bonds or to have the same adjudicated, and they have and still insist upon carrying out the said alleged illegal contracts, and, therefore, as it is necessary for him to do, this plaintiff, for himself and as a taxpayer of the said city and as relator on behalf of the said City of Corpus Christi sues herein for his own protection and as a taxpayer, and for the relief that the said City of Corpus Christi is justly entitled to"; that the plaintiff and the city, if not entitled to the injunction sought, are entitled to recover judgment against the defendants and each of them for the damages suffered by reason of the execution of the instruments and the payments past and future on account of the bonds.

Article 11, § 5, of the Constitution of Texas, known as the "home rule amendment," reads in part as follows: "Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."

Articles 1111 and 1112, Revised Civil Statutes of Texas (1925), as amended by Acts of 1927, Regular Session, c. 194, p. 276, are:

"Article 1111. All cities and towns operating under this title have power to mortgage and encumber their light systems, water systems, or sewer systems, either, both, or all, and the franchise and income thereof, and everything pertaining thereto, acquired or to be acquired, to secure the payment of funds to purchase same, or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or either, or all of them, and as additional security therefor, by the terms of such encumbrance,

may grant to the purchaser under sale or foreclosure thereunder, a franchise to operate the systems and properties so purchased for a term of not over twenty years after such purchase, subject to all laws regulating same then in force. No such obligation shall ever be a debt of such city or town, but solely a charge upon the properties so encumbered and shall never be reckoned in determining the power of such city or town to issue any bonds for any purpose authorized by law."

"Article 1112. No such light, water, or sewer system shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall same be encumbered for more than five thousand dollars, except for purchase money, or for extensions, or to refund any existing indebtedness, until authorized in like manner. Such vote in either case shall be ascertained at an election, of which notice shall be given in like manner as in cases of the issuance of municipal bonds by such cities and towns."

The charter of the city of Corpus Christi contains the following provisions:

Article 2, § 2. "It shall have all powers of municipal government not prohibited to it by this charter, or by some general law of the State of Texas. * * * No ordinance shall be enacted inconsistent with the laws of the State of Texas."

Article 12, § 1. "Any citizen who is a property tax payer of the City of Corpus Christi may maintain an action in the proper court to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement on behalf of the said city, and to restrain any disbursing officer of said city from paying any illegal, unauthorized or fraudulent bills, claims or demands against said city. * * *"

Article 12, § 14. "It shall be the duty of the city council, by ordinance to set apart and appropriate all the revenues and moneys derived from the operation of said works to the support, maintenance and extension thereof to other parts of the City, and no part of such revenue shall ever be appropriated to or used for any other purpose. * * *"

Article 12, § 15. "The City Council upon a vote of four-fifths thereof, shall have power, by ordinance, to contract for the extension of said water works to other parts of the City where needed, and, to this end, may pledge the net annual revenues thereof, and may give a lien on the said entire

plant, including such improvements or extensions, to secure the contract price of same, and may execute promissory notes therefor, signed by the Mayor and countersigned by the City Controller, and bearing interest at not exceeding six per cent per annum, and payable in equal annual installments; provided, such obligations shall never become a charge against the City or against the other revenues of the City, but said water works plant and said net annual revenues thereof shall stand pledged to secure the payment of said notes, and provided further that the cost of such improvements or extensions shall never exceed one-third of the actual value of said water works plant including such proposed improvements or extensions, and provided further that no extensions or improvements exceeding in cost the probable net revenues for any one year, shall ever be contracted for without first having been submitted to the vote of the qualified tax paying voters at an election held exclusively for that purpose."

It is a necessary prerequisite to the maintenance of an action for damages by a taxpayer on behalf of a municipal corporation against a third party for the taxpayer to allege the facts to show that he has made a demand upon the proper officers to bring such an action and that they have refused to do so or to show that such a demand by him would have been unavailing. It would result in endless confusion of municipal affairs if the individual citizen, who might be inspired by motives good or bad, could institute actions for damages for breach of municipal contracts without first presenting the question of the propriety of such procedure to the public officers, who are given discretion and charged with responsibility. The right of action, if any, is that of the city, not that of the citizen. He has involved no interest different from that of all of the other members of the general public. His initiative must be subordinated to that of the public by and through its duly selected officers. This petition is devoid of any allegation that Harris made demand upon the officers of the city to sue any of the defendants for damages on account of the matters mentioned in the petition, or that the officers refused to bring such an action after demand, or that such demand would have been fruitless. The demurrer was therefore correctly sustained in so far as the supposed cause of action for damages for breach of

contract is concerned. 5 McQuillan, Municipal Corporations, §§ 5333, 5369; City of Corpus Christi v. Mireur (Tex. Civ. App.) 214 S. W. 528, 531; City of San Antonio v. Strumberg, 70 Tex. 366, 7 S. W. 754, 755; Fisher v. City of Bartlett (Tex. Civ. App.) 76 S.W.(2d) 535; Anders v. City of Philadelphia, 235 Pa. 125, 83 A. 939; Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 147 N. E. 878; Wood v. Bangs, 1 Dak. 179, 46 N. W. 586; Dunn v. Long Beach Land & Water Co., 114 Cal. 605, 46 P. 607; Connelly v. City of Elmira, 144 Misc. 282, 258 N. Y. S. 603.

In City of San Antonio v. Strumberg, supra, the Supreme Court of Texas, speaking through Judge Gaines, said: "We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law, that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. As applied to public measures the doctrine is elementary. (2 Cooley's Blackstone, 219.) For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest. The principle has been frequently applied in this court to another class of cases, and the right of an individual to sue without showing some special damage, either suffered or threatened has been uniformly denied."

The same rule applies to the petition in so far as it may be construed as asserting a cause of action to recover from some or all of the defendants moneys previously paid by the city by way of interest or otherwise upon the bonds. Fuller v. Trustees of Deerfield Academy, supra; Wood v. Bangs, supra.

Nor does article 12, § 1, of the city charter, above quoted, change the general rule as to the purported causes of action for damages for breach of contract or for recovery of money paid. The language relates only to interference by the citizen with the making of illegal or unauthorized contracts by the officers of the city. It does not authorize the citizen to sue for the city. The distinction between a suit against the officers and one for the city is

clear upon the face of the charter provision. Thus, in City of Corpus Christi v. Mireur, supra, this court, through Chief Justice Fly, said: "Appellants seek to construe section 1, art. 12, of the charter, which provides that 'any citizen who is a property taxpayer of the city of Corpus Christi may maintain an action in the proper court to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement on behalf of said city,' as meaning that the taxpayer may act for the city in prosecuting a suit to restrain the execution of an illegal contract. Such construction is unwarranted. There would be no reason for placing any such power in the hands of the taxpayer, and the other matters which the taxpayer is given the right to have restrained clearly show that the suit is not in behalf of the city, but to prevent the city council, in behalf of the city, from making 'any illegal, unauthorized, or fraudulent contract or agreement.' Immediately in connection with the authority given to restrain the city from making illegal contracts is given the right to restrain any disbursing officer from paying illegal bills, etc., clearly indicating that the whole object of the section is to give authority to prevent illegal action on the part of the city or its officers, and not to assist them in avoiding some contract, into which they may have been inveigled."

A petition which seeks the equitable relief of cancellation, rescission, removal of cloud from title, and injunction, and which shows upon its face that the complainant has been guilty of laches, fails to state a cause of action, and is therefore subject to general demurrer. This petition deals with the construction of the water supply plant for the city, and shows the issuance of bonds therefor in amounts upon dates, respectively, as follows: $2,000,000 on July 21, 1927, $350,000 on August 1, 1928, and $375,000 on September 1, 1929. It, also, shows that there was a refunding issue on March 1, 1933, covering the two last issues. Presumably, the required newspaper notices were given and other precedent steps taken. These transactions were public acts of the city commission. Lands or easements were conveyed to the city. The bonds passed into the hands of the various persons referred to in the petition as "unknown owners and holders." The interest was paid on the bonds from time to time; and the sinking fund installments were periodically set aside. The citizen is charged by law with knowledge of these

things. The allegation seeking to excuse delay, that Harris had no occasion to learn the facts and could not have known them and did not know them until after the bonds had been delivered and the dam had washed away, is of no consequence. He must have known the facts; in legal contemplation he did know them. And yet it was not until September 24, 1932, that he filed the original petition in this case. The showing of such unreasonable delay, during which time the rights of others have intervened, constitutes laches and presents a fatal defect in the petition. Penn Mutual Life Insurance Co. v. City of Austin, 168 U. S. 685, 18 S. Ct. 223, 42 L. Ed. 626; Los Angeles Heights Ind. School District v. Chestnut (Tex. Civ. App.) 287 S. W. 693; Fannin-Lamar-Delta Imp. Dist. No. 3 v. State (Tex. Civ. App.) 73 S.W.(2d) 1101; McCauley v. North Texas Traction Co. (Tex. Civ. App.) 21 S.W.(2d) 309; Campbell v. Houchin (Tex. Civ. App.) 35 S. W. 753; Speidel v. Henrici, 120 U. S. 377, 7 S. Ct. 610, 30 L. Ed. 718; Tidd v. Kirkham, 124 Neb. 605, 247 N. W. 594; Conners v. City of Lowell, 246 Mass. 279, 140 N. E. 742.

The issuance of waterworks revenue bonds by a city of over 5,000 population for the construction of a reservoir and other additions to the waterworks system of the city is not required to be submitted to, and approved by, a majority of the taxpaying citizens of the city, although the charter of the city may so provide. The city of Corpus Christi, having sufficient population, is subject to the so-called "home rule amendment" (article 11, § 5, of the Constitution of Texas, adopted in 1912). The city's charter, granted by legislative act in 1909, required in terms that the issuance of such bonds should first be submitted to, and approved by a vote of, the taxpaying citizens of the city. The petition shows that these bonds were issued for the purpose of paying for the purchase of lands and the construction of a dam, a reservoir, a filtered water reservoir, a steel tower, and a pumping station, all of which were additions to an existing waterworks system of the city. The applicable constitutional provision, quoted in full above, provided, in part, that, "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws * * * of this State." Articles 1111 and 1112 of the statutes plainly confer upon the city the power to issue such bonds as those

here involved without submitting the question to a vote of the citizens. The exception from the requirement of submission to an election in such a case as this is found in article 1112, "except for purchase money, or for extensions, or to refund any existing indebtedness." Thus the charter and the statute are in conflict. And the conflict must by constitutional mandate be settled in favor of the statutory provision. It was unnecessary for the proposals for the issuance of the bonds and the giving of the respective liens as security for the payment thereof to be submitted to a vote of the citizens. The bonds and the deeds of trust executed to secure the payment thereof were valid. Huff v. City of Wichita Falls, 121 Tex. 281, 283, 48 S.W.(2d) 580, 583; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S. W. 1105; Hunt v. Atkinson (Tex. Com. App.) 18 S.W.(2d) 594; Anderson v. Brandon, 121 Tex. 188, 47 S.W.(2d) 261; City of Beaumont v. Fall, 116 Tex. 314, 291 S. W. 202; Brown v. Fidelity Investment Co. (Tex. Com. App.) 280 S. W. 567; City of Vernon v. Montgomery (Tex. Civ. App.) 265 S. W. 188; City of Dayton v. Allred, 123 Tex. 60, 68 S.W.(2d) 172; Womack v. City of West University Place (Tex. Civ. App.) 32 S.W.(2d) 930, 932.

In City of Dayton v. Allred, 123 Tex. 60, 68 S.W.(2d) 172, loc. cit. 177, the Commission of Appeals, in passing on the question as to the necessity of submission of such a bond issue to an election, said: "In the instant case the city of Dayton has no sewer system and expects to use the money derived from the sale of these bonds in the construction, acquisition, and completion of such a system. It is our opinion that such a record justifies the conclusion that, in so far as the proposed sewer system here involved is concerned, the mortgage thereon is for purchase money within the meaning of article 1112. While it is for more than $5,000, being for purchase money, it is not required by this statute that a vote be had."

In Womack v. City of West University Place, supra, it was said: "The ordinance authorizing the issuance of the bonds is set out in appellant's petition. It recites that the bonds are to provide for refunding the existing indebtedness of the waterworks system and the extension of municipal water and sewer plants and systems. It will be observed that article 1112, supra, authorizes the issuance of bonds in excess of $5,000 without a vote where the proceeds of the bonds are to be used to pay for the 'purchase money, or for extensions, or to refund any existing indebtedness.' In this case the bonds were to be used to refund existing indebtedness of the waterworks system and to extend the waterworks and sewer systems. So it appears that the ordinance was strictly in accord with the law, and no submission of the question to a vote was necessary."

In Huff v. City of Wichita Falls, supra, the Supreme Court said: "The courts have settled the question that charter provisions and city ordinances of home-rule cities are not valid when in conflict with the general laws of the state"—citing cases.

All of the appellant's assignments of error and the propositions thereunder are overruled.

The judgment of the district court is affirmed.